[No. S085780. July 8, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY CRAYTON, Defendant and Appellant.

In re TIMOTHY CRAYTON on Habeas Corpus.

**COUNSEL**

Gregory R. Ellis, under appointment by the Supreme Court; Wolff & Ellis, Wolff, Ellis & Clausen, Joan Wolff and Gerald Clausen for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GEORGE C. J.**—In *People v. Sohrab* (1997) 59 Cal.App.4th 89, 95-102 [68 Cal.Rptr.2d 749], the Court of Appeal held that in a felony proceeding a defendant's waiver of the right to counsel in the municipal court did not encompass waiver of that right in proceedings subsequently conducted in the superior court, and that a trial court's error in failing to readvise the defendant and obtain a new waiver in the superior court was reversible per se. In the present case, by contrast, another Court of Appeal held under somewhat similar circumstances that a trial court's error in failing to readvise a defendant of his right to counsel and to obtain a new waiver at his

superior court arraignment was not reversible per se, but instead required that its prejudicial effect be analyzed under the harmless error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (*Watson*), that applies to most state law errors. (Cal. Const., art. VI, § 13.)

We granted review to resolve the conflict in the decisions of the Courts of Appeal.

As we shall explain more fully below, we agree with the holding of the Court of Appeal in the present case that when a defendant charged with a felony has been fully and adequately advised at the municipal court stage of the proceeding (or now at the equivalent stage in a unified superior court) of his or her right to counsel throughout the proceedings (including trial) and the defendant has waived counsel under circumstances that demonstrate an intention to represent himself or herself both at the preliminary hearing and at trial, a superior court's failure to readvise the defendant and obtain a new waiver of counsel at the defendant's arraignment on the information in superior court, although erroneous under the governing California statute, does not automatically require reversal of the ensuing judgment of conviction. We also agree with the Court of Appeal that the prejudicial effect of such error must be evaluated under the harmless error standard set forth in *Watson*, *supra*, 46 Cal.2d 818, 836, and further agree that, under the *Watson* standard, the superior court's error in the present case was nonprejudicial.[1] Accordingly, we conclude that the judgment of the Court of Appeal, upholding defendant's conviction, should be affirmed.

## I

### A. *The Crimes*

A detailed description of the facts supporting the conviction of defendant Timothy Crayton is not essential to the resolution of the issues before us.

---

[1]The relevant trial court proceedings in this case occurred prior to the unification of the municipal and superior courts. Since unification, the proceedings that formerly were held in municipal court now are held in superior court, but the relevant procedural steps in a felony proceeding—the filing of a complaint before a magistrate, followed by a preliminary examination and, if the defendant is held to answer, the filing of an information and arraignment of the defendant on the information before a superior court judge—remain the same. (See generally Recommendation: Trial Court Unification: Revision of Codes (July 1998) 28 Cal. Law Revision Com. Rep. (1998) pp. 66-68.) Because the relevant proceedings in this case preceded unification, our opinion discusses and analyzes the issue here with reference to the events that occurred in the municipal and superior courts. Our holding, however, applies as well to felony proceedings in a unified superior court—i.e., a superior court's failure, at the arraignment on the felony information, to readvise an unrepresented defendant of his or her right to counsel, as required by statute, is subject to the *Watson* prejudicial error standard.

Instead, we recite the brief factual summary set forth in the opinion rendered by the Court of Appeal: "[D]efendant accosted Ms. H. on the early morning of August 21, 1997, as she entered her car after purchasing rock cocaine in Venice. Ms. H. remained in his custody or under his control until the next day. Defendant ordered Ms. H. to drive as he directed, twice ordered her to withdraw money from automatic teller machines, beat her, and forced her to orally copulate him while he smoked the drugs that she had purchased. Defendant moved Ms. H. to several locations, the last of which was a house in Santa Monica where Irwin Campbell and Chanta Payne were present. They too became victims of defendant. After sharing rock cocaine with them and Ms. H., defendant became enraged at the three individuals. He accused all of them of stealing Ms. H.'s bank card and claimed that they all owed him money. Defendant pointed a shotgun at them, beat them, and threatened to kill all of them. Finally, he ordered the three to disrobe and lie in a pile, covered them with a blanket and chair, poured a liquid on them, and flicked a lighter. Defendant then sat down and fell asleep. Police were summoned and arrested defendant."

A jury convicted defendant of forcible oral copulation (Pen. Code, § 288a, subd. (c)),[2] kidnapping for the purpose of robbery (§ 209, subd. (b)), two counts of first degree robbery (§ 211), assault with intent to commit a felony (§ 220), possession of a firearm by a felon (§ 12021, subd. (a)(1)), three counts of assault with a deadly weapon and by means of force likely to cause great bodily injury (§ 245, subd. (a)(1)), and three counts of making terrorist threats. (§ 422.)[3] Additionally, the jury found true the allegations that defendant was armed with a firearm on one robbery count (§ 12022, subd. (a)(1)) and personally used a firearm on the three assault-with-a-firearm counts (§ 12022.5, subds. (a) and (d)).

The jury also found that defendant had suffered three prior convictions of the serious felony of robbery (§ 667, subd. (a)(1)), and found true the special allegations that defendant had suffered six prior serious and violent felony convictions of robbery and one of assault with a deadly weapon, within the meaning of sections 1170.12, subdivisions (a) through (d), and 667, subdivisions (b) through (i).

The trial court imposed a sentence pursuant to the "Three Strikes" law, added prison time for the special allegations and prior convictions, and ordered that the sentences be served consecutively. As a result, defendant's state prison sentence amounted to a total term of 510 years to life. The trial court also ordered that defendant pay a restitution fine in the amount of $10,000.

[2]Subsequent statutory references are to the Penal Code, unless otherwise indicated.
[3]The jury acquitted defendant of certain other charges not pertinent here.

## B. *Defendant's Self-representation*

Defendant represented himself at his preliminary hearing and at trial. He contends that the trial court committed reversible error in failing to readvise him of his right to counsel and in not obtaining a new waiver of that right at his arraignment in superior court. The pertinent circumstances relating to defendant's claim are as follows.

### 1. *The September 4, 1997, arraignment in municipal court*

On September 4, 1997, defendant was arraigned in the Municipal Court of the Santa Monica Judicial District, County of Los Angeles, before the Honorable Hiroshi Fujisaki, a superior court judge sitting as magistrate. Defendant informed the court that he desired to represent himself. The court responded that "you're risking a lot if you don't have guidance of counsel." The court thereafter asked defendant whether he would permit the public defender's office to represent him. Defendant declined the court's offer, commenting: "I will stand on my *Faretta* [*v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562]] rights and represent myself. I don't need the services of the public defender's office." The court informed defendant: "[Y]ou're entitled to have a lawyer represent you at *all stages* of the proceedings. If you don't have the money for a lawyer, the Court will appoint a lawyer to represent you at no charge to you." (Italics added.) Defendant replied: "I've elected to represent myself in pro per, your Honor." The court asked: "Do you wish to be your own attorney?" Defendant responded affirmatively.

The court thereafter inquired: "Do you understand if you choose to represent yourself, you are required to do everything that a lawyer would be required to do in representing you[?] That would include preparation of your defense, the cross examination of witnesses who would be called to testify against you. [¶] It would require the preparation of all the motions that you may need to make in writing, those that must be made in writing. You're going to be required to prepare subpoenas and to subpoena witnesses to appear in court on your behalf if you wish to offer any evidence. [¶] You will have to—be responsible for the *selection of a jury, selection of the jury instructions that will be presented to the jury*. You'd be responsible for the examination of witnesses, cross-examination of witnesses[,] making opening and closing statements. [¶] And if you should be convicted, [self-representation] would require you to prepare your own requests such as they may be

with regard to your sentencing." (Italics added.) Defendant stated that he understood the court's admonitions.[4]

The court reiterated: "You understand that you're not required to be your own attorney, that the Court will appoint a lawyer to represent you at public expense. That will be made available to you immediately if you wish to have the services of a lawyer. Do you understand that, sir?"

Defendant responded: "Yes, and I thank you for it, but I elect to stand on my [*Faretta*] rights at this time. I don't see any competent public defenders, you know, that I've met. Just don't strike me as, you know, able to go the whole road. So I can go to the penitentiary on my own. I don't need any help to go to prison."

The court observed: "Mr. Crayton, you seem to be knowledgeable about the law. You know something about the law?"

Defendant replied: "I know that justice requires truth, your Honor, and *I intend to lay the truth out before the jury and before the trier of fact in case we don't get to a jury*." (Italics added.) Defendant reiterated his familiarity with *Faretta v. California, supra,* 422 U.S. 806.

The court asked the prosecutor to recite the list of constitutional rights that defendant intended to waive. The following colloquy ensued:

Prosecutor: "Mr. Crayton, again, you have a right to have an attorney at all stages of the proceeding. Do you understand that?"

Defendant: "Yes, I do."

Prosecutor: "Do you give up the right to have a counsel, and you wish to assert your [*Faretta*] rights and represent yourself?"

Defendant: "That is correct."

Prosecutor: "You have a right to confront and cross-examine all the witnesses that would testify against you in this matter. Do you understand that?"

Defendant: "Yes, I do."

---

[4]The trial court had observed that defendant was sitting in a wheelchair and that "you appear to be suffering from tremors." Defendant informed the court that his medical condition stemmed from "[t]oo many bullets. I have bullets in my spine. I've been shot up. . . . They're old gunshot wounds." He affirmed that he was not taking any medications.

[¶] . . . [¶]

Prosecutor: "If you don't have the money for an attorney, the Court will appoint you one. You understand that?"

Defendant: "Yes, I do."

Prosecutor: "And you still don't want an attorney?"

Defendant: "I have one."

Prosecutor: "Yourself."

Defendant: "Yes. Timothy Crayton is my attorney."

Prosecutor: "I'll just go through all the *Miranda* rights if he's going to make statements. Is that all right?"

The Court: "Yes."

Prosecutor: "Okay. You have the right to confront and cross-examine all the witnesses who would testify against you in any of these matters, be it at the preliminary hearing or at the trial. You understand that?"

Defendant: "Yes."

Prosecutor: "And you have the right to remain silent and the privilege against self-incrimination. Do you understand that?"

Defendant: "Yes."

The court thereafter gave defendant the following additional admonitions.

"You have the right to a trial by jury on this matter. At this stage, you are being arraigned, and you will be given a preliminary hearing, at which time, at the preliminary hearing, you have the right to be confronted by the witnesses, either directly or through the police officers testifying according to the Penal Code provisions allowing their testimony in lieu of the appearance of certain witnesses.

"At that preliminary hearing, you have the right to ask questions of the witnesses who are called, and you have the right to require that the prosecutor prove to the judge at the preliminary hearing that there is sufficient evidence to believe that you committed any of these offenses before you could be held to answer to stand trial in the superior court.

"If they cannot prove that you are the person who is charged in these offenses and that these offenses did occur, then the complaint must be dismissed. If the prosecutor proves these things, then you would be held to answer. Then you would be bought to the superior court within two weeks, 14 days, for arraignment again in the superior court, and then when you are arraigned in the superior court, you would be entitled to be brought to trial within 60 days from that arraignment date.

"If you're not brought to trial within that time, you have the right to have the case dismissed, unless you agree or you request a postponement that carries the case beyond that time.

"At the trial—as I said before, you have the right to trial by jury, if you wish it. The jury consists of 12 citizens selected by you and the prosecutor and the judge in a process called voir dire examination.

"*The jury will listen to the evidence presented to it by the prosecutor and any evidence that you may wish to offer, if you wish to offer any evidence.*

"*During that trial process*, you're going to have the obligation to protect yourself with regard to [r]ules of [e]vidence and the competency of witnesses. Since you're not a lawyer, I caution you that those rules are technical, and if you don't raise the objections, you may have given up the rights you may have under the [r]ules of [e]vidence, and evidence may come out *at the trial* that ordinarily a lawyer could keep out, but you would not have kept out because you may not have understood the [r]ules of [e]vidence.

"And you would not be able to later complain that you were . . . inadequately represented by yourself because you chose to represent yourself. That's the problem with the *Faretta* right, you understand. If you choose to represent yourself and you do a bad job or an inadequate job, *you can't ask for a new trial because you did an inadequate job.*

"I'm not saying that you're going to do an inadequate job. I'm just saying that you're going to be stuck with what you do or don't do. Do you understand that, sir?" (Italics added.)

Defendant: "Yes I do. I understand. I might have a fool for a client, but in this case, I'd like to do that. . . . I don't need no help to go to prison. I can go to prison by myself. . . . I don't need assistance to go to prison."

The court thereafter provided further admonitions, as follows.

"Now, after we get to that point of *the trial* where you're presenting evidence if you want to and the prosecutor has presented the evidence, at the end of the case, you have the right to submit *jury instructions*.

"*Jury instructions are basically rules of law that you're asking the judge to present to the jury to use in deciding your case.* You would have the obligation on your side to prepare the instructions you want and to object to any of the instructions the prosecutor submits if you don't feel that they are proper instructions. Okay. And if you don't object, you've given up the right to appeal that.

"*When the verdict comes down, if it's adverse to you and you are convicted,* you have the right to be sentenced within 21 days. You also have the right to the preparation of a probation report in the sentencing.

"If—after a probation report is ordered, you have the right to present to the probation department any information that would be helpful with regard to your sentencing, whatever they're going to recommend. You . . . have the right to input into the probation report." (Italics added.)

Defendant: "Yes, sir."

### 2. *The October 7, 1997, hearing*

At a hearing conducted on October 7, 1997, before the Honorable Bernard J. Kamins (a superior court judge who served as the magistrate presiding over defendant's preliminary hearing and as the judge who presided over defendant's trial in superior court), defendant raised a number of issues unrelated to the subject of the present appeal.[5] During this hearing, the court again offered to provide defendant with legal representation, as follows: "Mr. Crayton, you have chosen to represent yourself. [¶] . . . [¶] If you wish to have a lawyer appointed, . . . let me appoint a lawyer for you. And you have denied that request to me to assist you. [¶] . . . If you have the chance to have an excellent lawyer represent you, and you're denying that request, or at least throwing it aside and now complaining it's too hard for you to represent yourself, that's really patently absurd, when you have the ability to

---

[5] These issues involved defendant's contentions that (1) he improperly had been denied access to a voice-activated computer or paralegal services that he claimed to need in view of his pro se status and his alleged physical disabilities, (2) the charges against him were subject to demurrer, and (3) he was entitled to a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]. With regard to the latter issue, the court aptly characterized defendant's request for a *Marsden* hearing as "absurd": "That's for somebody who wants to fire their own lawyer . . . . Do you want to fire your lawyer? Your lawyer is you."

have a lawyer helping you. [¶] So, you don't want that. [¶] I would even consider a court advisory lawyer for you, someone to assist you, and you [have] turned that down." In response, defendant reiterated his request for the "tools that I need" (i.e., a voice-activated computer or paralegal services); "when I get the tools, I'm fine."

### 3. *The October 14-15, 1997, felony preliminary hearing*

The preliminary hearing in this case was conducted on October 14-15, 1997, before Judge Kamins, sitting in the capacity of a magistrate. At the conclusion of the People's presentation at the preliminary hearing, the court informed defendant: "The court has offered to have a lawyer represent you; if not, an advisory counsel; if not that, then legal runners. And you have not availed yourself of those items. [¶] Also if you would like an investigator, I would be glad to appoint an investigator for you at the court's expense. [¶] So right now, do you have any defense you wish to put on at this time?" Defendant responded: "My defense to the court's comments is too little too late."

### 4. *The October 29, 1997, arraignment in superior court*

At defendant's arraignment on October 29, 1997, held before Judge Kamins acting in his capacity as a superior court judge, the court invited defendant to enter a plea, to which defendant responded with a challenge to the proceedings, on the ground that "the court doesn't have jurisdiction." The court thereafter entered a plea of not guilty on defendant's behalf, set a trial date, and observed: "I would state that even though you are representing yourself and represent that you have handicaps that slow you up, you're one of the . . . most naturally bright defendants that's been in front of me in many, many years. [¶] So, in spite of whatever handicaps you feel you have, your ability to address the court, write papers, argue your own motions, say the right things is good. [¶] And I would say that nothing is slowing you up from your ability to handle your own case. In fact, you're probably better than a lot of lawyers I've seen." The court did not provide any further advisement to defendant at that time regarding his right to counsel, nor did the court seek to obtain a new waiver of that right.

### 5. *The December 16, 1997, scheduled commencement of trial*

Defendant's trial was scheduled to commence on December 16, 1997. On that date, he sought and obtained a continuance. As to defendant's self-representation, the trial court observed: "The court . . . asked you if you wanted any advisory counsel, and you turned that down." Defendant replied: "Advisory counsel can't help me, your honor."

6. *The April 20, 1998, actual commencement of trial*

On April 20, 1998, the trial court informed defendant that, based on the court's concern that defendant would not participate meaningfully at trial, it had appointed standby counsel, William Windon. Defendant objected, stating: "It won't be necessary. I've got a real good lawyer representing me, Timothy Crayton. [¶] . . . [¶] I object to any standby counsel, because you're trying to take my pro per status. And that, that's not right, that's unfair. [¶] . . . [¶] I'm defending Timothy Crayton the best way I can. And I think I'm doing a good job. And so I don't see where standby counsel would come in."

Although the trial court agreed as to defendant's competency to represent himself, it was not persuaded to withdraw its appointment of standby counsel to assist defendant should the need arise: "I know that you're a bright fellow. I've seen your legal work. And I do agree that you've done more than most lawyers would do, and phrased your legal motions in appropriate form, and been very competent. [¶] . . . And I want you to have the best representation."

Defendant reaffirmed his desire and willingness to represent himself: "*Your Honor, I represented myself at four jury trials. I have never lost a jury trial. I've won all four jury trials.* [¶] . . . *I know how to conduct myself at a trial.* I have a duty to my client to represent him to the best of my ability." (Italics added.) Defendant then moved to dismiss the charges "based on the grounds [among other reasons] that I've been denied the right of self-representation and effective meaningful self-representation . . . ." Defendant added: "I'm speaking under duress, under the threat of having my pro per status taken."

The trial court disagreed with defendant's characterization: "Mr. Crayton, I've not threatened to take away your pro per status, only to have an attorney come in to take over the case if you don't represent your client to the best of your ability. [¶] If you're going to tune out, then I want a lawyer to step in. If you wish, and it's your conscious choice not to participate, and to just sit there, you know you may be right, and maybe I wouldn't bring in standby counsel at that point. But I'll ask you if you want me to bring in counsel." Defendant replied: "No I do not."[6]

---

[6]The record indicates that on April 20, 1998, defendant also filed a motion to disqualify the trial court judge that included, among other assertions, an allegation that "[a]s a result of a direct telephone call from Chief Justice George of the California Supreme Court to Hon. Bernard J. Kamins the trial court has alternated from refusal to provide 'reasonable

## C. *Defendant's Trial*

At trial, defendant represented himself capably, repeatedly drawing praise from the trial court regarding the quality of his self-representation. Throughout the trial, defendant refrained from relinquishing his defense to standby counsel, even after being reminded by the trial court that if, for some reason, defendant was unable to represent himself, standby counsel was available to take over the defense. After the jury returned its verdicts finding defendant guilty of most of the charged offenses, defendant stated that he desired to retain his propria persona status. As noted, the trial court entered judgment against defendant, sentencing him to a total term of 510 years to life in state prison.

## D. *Defendant's Appeal*

Defendant filed a timely appeal, and the Court of Appeal corrected the sentence to reduce its length by 50 years, made other modifications not relevant here, and otherwise affirmed the judgment for reasons more fully set forth in the discussion below.[7]

Defendant thereafter filed a petition for review, which we granted, directing the parties to limit their briefing and argument to the issue "whether the trial court erred in failing to obtain an express waiver of the right to counsel in superior court when defendant expressly waived the right to counsel in municipal court and, if so, what prejudicial standard applies."

## II

### A. *The Governing Statutory Procedure*

 In the present case, the trial court proceedings occurred prior to the unification of the municipal and superior courts. After unification, the proceedings in the early stages of a felony prosecution that formerly were held in municipal court now are held in superior court, but the basic procedural steps—the filing of a complaint before a magistrate, the holding

---

accommodations' to falsely posturing on the record appearing to issue (meaningless bad faith) orders for 'reasonable accommodations'. . . ." At the April 20 proceeding, the trial court denied the motion and responded on the record in part: "I have not received a call from Justice George on this case, nor any case, nor for any reason at any time has Judge George [seen] fit to give me a buzz either at home or at court." Defendant has not questioned the accuracy of the trial court's statement in this regard, and has not raised any issue on appeal relating to this allegation.

[7]At the same time, the Court of Appeal also denied defendant's petition for writ of habeas corpus.

of a preliminary examination before a magistrate, and the filing of an information and arraignment on the information before a superior court judge—remain the same. Because the relevant proceedings in this case preceded unification, we discuss the statutory provisions with reference to the functional division between the municipal and superior courts that existed at that time. (See also Stats. 1998, ch. 931, §§ 359, 360 [amending Pen. Code, §§ 806, 808, to conform to unification of trial courts].)

Prior to unification, unless the prosecution elected to seek an indictment before a grand jury, felony proceedings were commenced with the filing of a complaint in municipal court before a magistrate. (§ 806.) Although the complaint was filed in municipal court, the magistrate could be either a municipal court or superior court judge. (§ 808.)[8] When a complaint was filed, section 859 directed that the defendant be taken before a magistrate without unnecessary delay, and that the magistrate inform the defendant of his or her right to counsel. The magistrate then was required to set a date for the preliminary examination. (§ 859b.) At the conclusion of the preliminary examination, the magistrate determined whether there was sufficient cause to hold the defendant to answer on a felony charge. (§ 872.) If the defendant was held to answer on a felony charge following the preliminary examination, the prosecution filed an accusatory pleading—an information—in superior court, charging the defendant with the felony offense. When the information was filed, the defendant was arraigned on the charges in superior court. (§ 976.) Section 987 provides that if a defendant appears for arraignment without counsel, the court shall inform the defendant of his or her right to counsel and shall ask the defendant whether he or she desires the assistance of counsel.[9]

In sum, the governing statutes provided (and continue to provide) that a defendant in felony proceedings shall be advised of the right to counsel on at least two distinct occasions prior to trial: first, when the defendant is brought before a magistrate and advised of the filing of the complaint (§ 859), and second, after the preliminary examination, when the defendant is arraigned in superior court on the information (§ 987). Because, however, the same

---

[8]Under section 808, a judge of any court of record, including justices of the Courts of Appeal and the Supreme Court, also may serve as magistrate.

[9]Section 987, subdivision (a), currently provides: "In a noncapital case, if the defendant appears for arraignment without counsel, he or she shall be informed by the court that it is his or her right to have counsel before being arraigned, and shall be asked if he or she desires the assistance of counsel. If he or she desires and is unable to employ counsel the court shall assign counsel to defend him or her." (See also § 859 [setting forth similar requirements that apply after the filing of the complaint].) Although the version of section 987 in effect at the time of trial was repealed and replaced in 1998 (Stats. 1998, ch. 587, §§ 3, 4), the provisions relevant to the issue in this case are identical in both versions of the statute.

superior court judge sometimes served both as magistrate during the municipal court proceedings and also as the trial judge in superior court, the duty under section 987 to readvise the defendant of the right to counsel occasionally has been overlooked. Thus, when a superior court judge, sitting as a magistrate, already had conducted a lengthy exchange with the defendant in which the judge had explained to the defendant the defendant's right to counsel and had cautioned the defendant about the pitfalls of self-representation both at the preliminary hearing and at trial, and the defendant had expressed an understanding of the risks and a desire nonetheless to proceed without counsel throughout the proceedings, the judge inadvertently might fail to readvise the defendant when the defendant appeared before the same judge for arraignment on the felony information. That appears to be what occurred here.

■ Prior decisions of this court have held that under section 987, the superior court is required to advise a defendant of his or her right to counsel in superior court whenever the defendant appears without counsel at the arraignment, even when the defendant previously has been advised of the right to counsel and has expressed an intention to waive counsel throughout the proceedings. (*People v. Crandell* (1988) 46 Cal.3d 833, 858, fn. 5 [251 Cal.Rptr. 227, 760 P.2d 423]; see also *People v. McKenzie* (1983) 34 Cal.3d 616, 635 [194 Cal.Rptr. 462, 668 P.2d 769] [observing that "[t]he People *concede* that defendant's waiver of the right to counsel in municipal court did not continue in effect in superior court" (italics added)].) Because the language of section 987 sets forth no exceptions, this rule applies even when, as in the case at bar, the same judge presides in the municipal court and at trial in the superior court.

Despite some equivocation at oral argument, and a belated reference to *In re Connor* (1940) 15 Cal.2d 161 [99 P.2d 248], the People concede in their briefing that in view of our decisions in *People v. Crandell* and *People v. McKenzie*, the superior court in the present case erred in failing to readvise defendant of his right to counsel and in failing to obtain a new waiver of that right when defendant was arraigned on the felony information in superior court. The question presented here is whether the superior court's error was prejudicial under either federal or state law. To answer this question, we employ the analytical framework relied upon by the Court of Appeal. ■ As that court explained: "Defendants enjoy two distinct rights: (1) a *constitutional* right to the assistance of counsel under the Sixth Amendment, which may be waived, and (2) a *statutory* right under section 987, subdivision (a), to be informed at arraignment in superior court of the right to counsel and to have counsel appointed. Although both provisions protect the right to counsel, they derive from different sources and are not coterminous."

B. *Whether, Under the Federal Constitution, the Superior Court's Failure to Readvise Defendant of His Right to Counsel Was Error*

Turning first to the question whether the Sixth Amendment right to the assistance of counsel requires that the superior court readvise a defendant of his or her right to counsel and obtain a waiver, we observe that the weight of federal authority concludes that it does not.

■ The Sixth Amendment right to the assistance of counsel applies at all critical stages of a criminal proceeding in which the substantial rights of a defendant are at stake. (*Mempa v. Rhay* (1967) 389 U.S. 128, 134 [88 S.Ct. 254, 256-257, 19 L.Ed.2d 336].) The right to counsel may be waived by a defendant who wishes to proceed in propria persona. (*Faretta v. California, supra,* 422 U.S. 806, 807 [95 S.Ct. 2525, 2527].) By such waiver, a defendant surrenders "many of the traditional benefits associated with the right to counsel." (*Id.,* at p. 835 [95 S.Ct. at p. 2541].) In view of these consequences, a knowing and intelligent waiver of the right to counsel is required before a criminal defendant is permitted to proceed in propria persona. (*Ibid.*)

■ Federal authority holds that once a defendant gives a valid waiver, it continues through the duration of the proceedings unless it is withdrawn or is limited to a particular phase of the case. "While it is true that the Sixth Amendment right to counsel applies at all critical stages of the prosecution, including the sentencing stage, it does not follow that once the assistance of counsel in court has been competently waived, a new waiver must be obtained at every subsequent court appearance by the defendant. A competent election by the defendant to represent himself and to decline the assistance of counsel once made before the court carries forward through all further proceedings in that case unless appointment of counsel for subsequent proceedings is expressly requested by the defendant or there are circumstances which suggest that the waiver was limited to a particular stage of the proceedings." (*Arnold v. United States* (9th Cir. 1969) 414 F.2d 1056, 1059.)

In federal practice, a waiver of counsel has been held to remain in effect despite various breaks in the proceedings. In *U.S. v. Springer* (9th Cir. 1995) 51 F.3d 861, for example, the court held that a defendant's waiver of the right to counsel carried over from a first trial, which ended in a mistrial, to a retrial of the same matter. (*Id.,* at pp. 864-865.) "The retrial was obviously a continuation of the criminal prosecution, and the waiver was obviously intended to stand absent an attempt to withdraw it. The matter of representation was in [the defendant's] hands alone. After his earnest and insistent

request, he had been granted the right to represent himself. If he found himself wavering in his resolve so to do, he or his advisory counsel could have so informed the court." (*Id.*, at p. 865.) *White v. United States* (9th Cir. 1965) 354 F.2d 22 similarly held that a waiver remained effective when a defendant continued to represent himself at resentencing following the issuance of a writ of habeas corpus. Although the court at the resentencing did not ask defendant whether he wished to continue representing himself, the reviewing court concluded that the trial court had no sua sponte obligation to readvise the defendant of his right to counsel. (*Id.*, at pp. 22-23; see also *U.S. v. Unger* (1st Cir. 1990) 915 F.2d 759, 761-762 [waiver at arraignment in state juvenile court continued through two subsequent dispositional and sentencing hearings]; *U.S. v. Fazzini* (7th Cir. 1989) 871 F.2d 635, 641-644 [waiver before trial extended through sentencing, and court had no duty to re-inquire absent "substantial change in circumstances"].)

Defendant contends that the present case does not resemble the federal decisions, cited above, in which substantial breaks in the proceedings were deemed insufficient to eliminate the continuing validity of a defendant's waiver, but is more akin to those decisions in which a court completely fails to advise a defendant of the risks of self-representation. The court in *Sohrab* drew a similar distinction. (See *People v. Sohrab, supra,* 59 Cal.App.4th 89, 100-102, citing and relying upon *People v. Hall* (1990) 218 Cal.App.3d 1102, 1108-1109 [267 Cal.Rptr. 494].)

We find defendant's contention unpersuasive. Unlike the cases relied upon by defendant, the instant matter involves a defendant who *was* clearly and fully admonished of the risks involved in representing himself at both the preliminary hearing and trial stages and who nonetheless elected to represent himself throughout the proceedings; the only error that occurred was the superior court's failure to *readvise* defendant of such risks prior to the commencement of trial. Under these circumstances we conclude that the trial court's error was not of federal constitutional magnitude, and that the prejudicial error standard applicable to federal constitutional error does not apply.

C. *Whether, Under California Law, the Superior Court's Failure to Readvise Defendant of His Right to Counsel Was Prejudicial*

■ As noted above, the People concede that under section 987, subdivision (a), the superior court was obligated to inform defendant of his right to appointed counsel and to obtain a waiver of that right at the time defendant was arraigned on the felony information, notwithstanding the admonitions given to—and waivers taken from—defendant under section

859 during the municipal court proceedings, and that the court erred in failing to do so. The question is what prejudicial error standard applies.

Relying upon familiar authority, the Court of Appeal reiterated that all trial court error under California law is governed by article VI, section 13 of the California Constitution: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, . . . or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (See *People v. Flood* (1998) 18 Cal.4th 470, 483, fn. 10 [76 Cal.Rptr.2d 180, 957 P.2d 869]; *People v. Cahill* (1993) 5 Cal.4th 478, 500, 503 [20 Cal.Rptr.2d 582, 853 P.2d 1037].) ■ As this court long has held, under the "miscarriage of justice" standard of article VI, section 13, a trial court error generally is not reversible unless there is a reasonable probability that the defendant was prejudiced as a result of the error. (*People v. Flood, supra,* 18 Cal.4th at p. 483; *Watson, supra,* 46 Cal.2d 818, 836.)

■ Although a reversible per se rule may apply under California Constitution, article VI, section 13, when a defendant erroneously is denied the right to counsel or never has knowingly or voluntarily waived that right (see *People v. Cahill, supra,* 5 Cal.4th 478, 501 [recognizing that "in some instances an error may result in a 'miscarriage of justice' within the meaning of the California provision" without a showing of actual prejudice]), we agree with the Court of Appeal that the *Watson* standard applies to the superior court's error in failing to follow the *statutory* command that the court, at the arraignment in superior court, *readvise* a defendant of his or her right to counsel and obtain a renewed waiver of that right. As discussed above, and as interpreted in *People v. Crandell, supra,* 46 Cal.3d 833, 858, footnote 5, and *People v. McKenzie, supra,* 34 Cal.3d 616, 635, section 987 requires that a defendant who appears at the arraignment in superior court without counsel be advised of his or her right to counsel, even when the defendant in the municipal court knowingly waived counsel and expressed a desire to represent himself or herself. Although section 987 requires this additional advice and inquiry at the arraignment on the felony information as a prophylactic safeguard, nothing in the language of the statute provides that when a defendant previously has been informed of his or her right to counsel at trial and has been adequately warned of the pitfalls of representing oneself at trial, the defendant's prior waiver of counsel and exercise of the constitutional right to represent himself or herself shall not "carry over" or be legally "effective" in the absence of a renewed warning and waiver.

To the extent that language in our prior decisions conveys such an impression (see, e.g., *People v. Crandell, supra,* 46 Cal.3d 833, 858, fn. 5

["neither an appointment . . . nor a waiver of counsel in municipal court *carries over* into superior court" (italics added)]; *People v. McKenzie, supra,* 34 Cal.3d 616, 635 ["[t]he People concede that defendant's waiver of the right to counsel in municipal court *did not continue in effect* in superior court" (italics added)]), we conclude that such language misleadingly overstates the effect of section 987. When a defendant has been fully informed of his or her right to counsel at all stages of the proceedings (including trial), and voluntarily and knowingly has invoked the right to represent himself or herself throughout all the proceedings, the trial court's failure to provide a new advisement and obtain a renewed waiver at the arraignment (as required by section 987) does not operate to terminate or revoke the defendant's validly invoked constitutional right to represent himself or herself at trial.

Furthermore, contrary to defendant's claim, we believe that a trial court's error in failing to comply with section 987 clearly is susceptible to harmless error analysis. The complete record of the trial court proceedings often will shed light upon whether a defendant, despite the absence of an explicit readvisement by the superior court at arraignment, nonetheless was aware that
he or she had the right to appointed counsel at the subsequent proceedings and whether an explicit advisement at the arraignment would have been likely to lead the defendant to reconsider the decision to represent himself or herself and request that counsel be appointed. (Accord, *United States v. Vonn* (2002) 535 U.S. 55, 74-76 [122 S.Ct. 1043, 1054-1055, 152 L.Ed.2d 90, 109-110].)

In some cases, the exchange between the magistrate and the defendant during the initial advisement and waiver may raise questions as to whether the defendant voluntarily and knowingly intended to waive his or her right to counsel throughout the entire proceedings or only at the preliminary hearing. In *People v. Sohrab, supra,* 59 Cal.App.4th 89, for example, the defendant, unlike defendant here, expressed equivocation in the municipal court proceedings as to whether he desired to represent himself and, if so, at what stages of the proceedings. (*Id.,* at pp. 92-95.) Under such circumstances, a superior court's failure to obtain a new and clear indication that the defendant desired to represent himself or herself at trial might well be prejudicial under the *Watson* standard.

Because of the circumstances attending the present case, however, we agree with the Court of Appeal's conclusion that the error was not prejudicial under the *Watson* standard, there being no reasonable probability that defendant was unaware of his right to be represented by appointed counsel at trial or that he would have accepted the appointment of counsel had the court made the statutorily required inquiry at arraignment. As we have seen, the

advisements that defendant received at the outset of the proceedings explicitly informed defendant of his right to counsel at all stages of the proceedings, including trial, and warned him of the risks of representing himself at trial. Although the court apprised defendant repeatedly of the risks of self-representation, defendant's desire to represent himself was unwavering throughout the proceedings. In light of the entire record (see *People v. Howard* (1992) 1 Cal.4th 1132, 1178 [5 Cal.Rptr.2d 268, 824 P.2d 1315]), there can be no doubt that defendant was aware of his right to appointed counsel at all stages of the proceedings and knowingly and voluntarily waived that right, insisting upon exercising his constitutional right to represent himself. Thus, we conclude that the Court of Appeal properly determined that there is no reasonable probability that the superior court's error in failing to readvise defendant of his right to counsel at the arraignment affected defendant's decision to represent himself throughout the course of the proceedings. (*Watson, supra,* 46 Cal.2d 818, 836.)[10]

## III

The judgment of the Court of Appeal is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.

Appellant's petition for a rehearing was denied September 18, 2002. George, C. J., and Baxter, J., did not participate therein.

---

[10]To the extent it is contrary to the views expressed herein, *People v. Sohrab, supra,* 59 Cal.App.4th 89, is disapproved.