Filed 4/15/13  P. v. Sneed CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DONNIE KAY SNEED,<br><br>    Defendant and Appellant. | B233710<br><br>(Los Angeles County<br>Super. Ct. No. BA314300) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alex Ricciardulli, Judge.  Affirmed.

Tara Hoveland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Marc A. Kohm and Sonya Roth, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Donnie Kay Sneed appeals from the judgment entered following his conviction after a jury trial of failing to register as a sex offender.  Sneed elected to represent himself throughout the proceedings.  He contends the trial court committed reversible error by failing to readvise him of his right to counsel.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.  *The Charges and Pretrial Proceedings*

On December 20, 2006, Sneed was charged by felony complaint with one count of failing to register as a sex offender (Pen. Code, § 290, subd. (a)(1)(A)), with special allegations he had suffered two prior serious or violent felony convictions within the meaning of the "Three Strikes" law (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)) and had served one separate prison term for a felony (Pen. Code, § 667.5, subd. (b)).  An arrest warrant was issued.

On May 6, 2010, the day of the preliminary hearing, Sneed appeared in court represented by a deputy public defender.  He asked to represent himself (*Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562]) and submitted the required form for in propria persona status (*Faretta* waiver form).  On this form, Sneed indicated he had represented himself before at a plea hearing.  Sneed placed his initials next to seven different warnings about the consequences of waiving his right to counsel.  He signed the form, acknowledging he was "freely and voluntarily giv[ing] up [his] right to have a professional attorney represent [him]."  After speaking with Sneed and reviewing his completed *Faretta* waiver form, the trial court found Sneed competent to represent himself.  The court granted Sneed pro per privileges, appointed standby counsel, relieved the public defender's office as counsel of record and granted the defense motion to continue the preliminary hearing.

Following a preliminary hearing on July 22, 2010, Sneed was held to answer.  An information was filed on August 5, 2010.  At Sneed's arraignment on the information, at which standby counsel was present, Sneed appeared in pro per, entered a plea of not guilty to the charge and denied the special allegations.

On November 10, 2010, the People filed an amended information, charging Sneed with one count of failing to register as a sex offender, with special allegations he had suffered three prior serious or violent felony convictions within the meaning of the Three Strikes law and had served one separate prison term for a felony. Sneed was rearraigned, entered a plea of not guilty and denied the special allegations. Standby counsel was present in court at the time.

2. *The Trial Proceedings*

a. *Discussion of Sneed's Right to Counsel*

Trial was set for February 18, 2011. Prior to jury selection on the morning of trial, Sneed complained to the trial court about his inability to obtain discovery from the People and to secure subpoenas for defense witnesses, and he insisted the prior convictions alleged against him were not his. The court addressed Sneed's concerns, and began to explain to Sneed the voir dire process, when the following exchange occurred:

"The Court: Do you want me to ask them anything else? I'm going to give you an opportunity to also ask questions but –

"[Sneed]: You know I don't know what to ask them. Like I said before, I object to this whole thing.

"The Court: Okay. Listen. I've got that. You decided to represent yourself. No one has forced you to do so.

"[Sneed]: No. I [sic] been forced.

"The Court: You have not been forced.

"[Sneed]: I had two lawyers to [sic] take a conflict of interest on the case.

"The Court: Okay. That has been ruled on.

"[Sneed]: Yes sir.

"The Court: If you want the public defender who was originally representing you, we will get that public defender to represent you. Don't say you don't have a choice. You have a trained individual who is ready, willing and able, far better able to represent you on these serious charges. [¶] You have decided to represent yourself. It's your choice. We respect that choice. We are going to make every effort to make sure that you

3

receive a fair trial. But the fact that by representing yourself you're going to have a very poor lawyer – you know the old saying, a person who represents himself has a fool for a lawyer – that's not our fault. [¶] All right [sic]. Just so we have got that clear. [¶] You know, I have no choice, you have a choice. You've got to do the best you can with the choice you have made."

The trial court then completed its explanation of the voir dire process, asked Sneed if he understood, and Sneed answered, "Yes." Sneed did not ask for appointed counsel at that time or at any other time during the proceedings.

        b. *Summary of Trial Evidence*

According to the evidence presented at trial, on October 20, 2006, prior to being released on parole, Sneed met with James Hadfield, a state correctional counselor. Hadfield reviewed with Sneed a parole release form and sex registration form informing Sneed of his duty to register as a sex offender. Both documents were signed by Hadfield, and signed, initialed and thumb-printed by Sneed. During the interview, Sneed told Hadfield that he intended to reside in the area of 5th and Main Streets in downtown Los Angeles.

When Sneed was paroled in 2006, he was ordered to reside at the VIP Motel in Maywood. Sneed never checked into the motel, and a warrant was issued for his arrest. After Sneed surrendered on the warrant and was taken into custody, he spoke with his parole agent, Michael Williams. Sneed told Williams he had registered in 2006 with the Los Angeles Police Department in downtown Los Angeles. Williams found no record in his parole file of Sneed having registered in 2006.

Los Angeles Police Officer Kane Mayer and Los Angeles County Sheriff's Detective Wilynn Clinkscales checked the databases of their respective law enforcement agencies and found no record of Sneed having registered in 2006 in Los Angeles County, or in any other jurisdiction in California.

Sneed neither testified nor presented other evidence in his defense.

*Verdict and Sentencing*

The People's theory was that Sneed willfully failed to register within five days of being released from incarceration in 2006. The defense theory, which Sneed presented through cross-examination and argument to the jury, was that he did register in 2006, but the computer records of his registration were either never created or were lost or destroyed  The jury found Sneed guilty of failing to register as charged. After Sneed waived his right to a jury trial on the special allegations, the trial court found them true.

At sentencing on June 3, 2011, the trial court heard and denied Sneed's motions for a new trial and to dismiss his prior strike convictions (Pen. Code, § 1385; *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 531). The court sentenced Sneed as a third strike offender to an aggregate state prison term of 25 years to life.

## DISCUSSION

1. *Although the trial court may have erred in failing to readvise Sneed of his right to counsel at arraignment or rearraignment, the error was harmless*

The Penal Code provides "a defendant in felony proceedings shall be advised of the right to counsel on at least two distinct occasions prior to trial: first, when the defendant is brought before a magistrate and advised of the filing of the complaint [under Penal Code, section 859], and second, after the preliminary examination, when the defendant is arraigned . . . on the information [under Penal Code, section 987]." (*People v. Crayton* (2002) 28 Cal.4th 346, 360.) The "language of [Penal Code] section 987 sets forth no exceptions" to the rule. (*Id.* at p. 361.) Here, there is no indication in the record as to whether the trial court readvised Sneed of his right to counsel at either the August 5, 2010 arraignment or the November 10, 2010 rearraignment, after the court advised Sneed of his right to counsel on May 6, 2010. There are no reporter's transcripts of these later proceedings, and their accompanying minute orders make no reference to Sneed having been advised of his right to counsel.

Assuming, without deciding, the trial court failed to readvise Sneed and to obtain a new waiver of his right to counsel, the trial court erred. But the error is not reversible per se. "[W]hen a defendant charged with a felony has been fully and adequately advised at

5

the . . . [arraignment on the complaint] of his or her right to counsel throughout the proceedings (including trial) and the defendant has waived counsel under circumstances that demonstrate an intention to represent himself or herself both at the preliminary hearing and at trial, a superior court's failure to readvise the defendant and obtain a new waiver of counsel at the defendant's arraignment on the information in superior court, although erroneous under the governing California statute, does not automatically require reversal of the ensuing judgment of conviction." (*People v. Crayton, supra,* 28 Cal.4th at p. 350.) We reverse only if we find a reasonable probability that defendant was unaware of his right to be represented by appointed counsel at trial or that he would have accepted the appointment of counsel had the court made the statutorily required inquiry at arraignment. (*Id.* at p. 365, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

The California Supreme Court has explained "a trial court's error in failing to comply with [Penal Code] section 987 clearly is susceptible to harmless error analysis. The complete record of the trial court proceedings often will shed light upon whether a defendant, despite the absence of an explicit readvisement by the superior court at arraignment, nonetheless was aware that he or she had the right to appointed counsel at the subsequent proceedings and whether an explicit advisement at the arraignment would have been likely to lead the defendant to reconsider the decision to represent himself or herself and request that counsel be appointed." (*People v. Crayton, supra,* 28 Cal.4th at p. 365.)

Sneed argues because (as he told the trial court), he felt he had been forced to represent himself after one or more of his prior counsel had declared a conflict of interest, it was reasonably likely he would have accepted appointment of counsel had the trial court made the statutorily required inquiry at arraignment or rearraignment. This claim is unpersuasive in light of the trial court's response to Sneed at the time. The trial court told Sneed that he was not being forced to represent himself, and strongly encouraged Sneed to request appointed counsel, even offering to appoint the same deputy public defender who had originally represented him, and reminded Sneed of the risks involved in representing himself. This discussion between Sneed and the trial court occurred on the

day of trial, nine months after Sneed had waived his right to counsel, and at a point when Sneed was experiencing frustration in acting as his own attorney. Nonetheless, Sneed decided not to accept the trial court's offer of appointed counsel. Under these circumstances, we do not find that a proper readvisement at the arraignment or rearraignment would have led Sneed to reconsider his decision to represent himself and request that counsel be appointed.[1]

2. *Sneed was not prejudiced by the typographical error in the jury instructions*

To convict a defendant of failing to register pursuant to Penal Code section 290, subdivision (a)(1)(A), the People must establish he or she had a duty to register, which includes proof that the defendant was convicted of one or more sexually-related offenses enumerated in the statute. (Pen. Code, § 290, subds. (a)(1)(A), (a)(2)(A) & (B).)

In this case, the People alleged that Sneed had been convicted of forcible rape and forcible oral copulation, both of which were among the statute's enumerated predicate offenses in 2006. (See Pen. Code, § 290, subd. (a)(1)(B) ["Any person who, since July 1, 1944, has been or is hereafter convicted in any court in this state . . . of a violation of . . . paragraph (2) . . . of subdivision (a) of [Penal Code, s]ection 261 [forcible rape]; . . . [Penal Code,] section 288a [forcible oral copulation is Penal Code, section 288a, subdivision (c)(1)]."] However, in instructing the jury on the elements of the offense of failing to register, the trial court told the jury that to prove Sneed guilty of the crime, the People had to prove he "was previously convicted of Penal Code, section 261.2 [rather than Penal Code, section 261, subdivision (a), paragraph (2)] and Penal Code, section 288(A) [rather than Penal Code, section 288a, subdivision (c)(1)]."[2] Sneed points out

---

[1] To the extent Sneed is suggesting his comments to the trial court demonstrate his *Faretta* waiver was not voluntary, this claim is not borne out by the record, which shows he was adequately advised of his right to counsel and he intelligently, freely and voluntarily gave up that right.

[2] The trial court instructed: "The defendant is charged in Count 1 with failing to register as a sex offender in violation of Penal Code, section 290. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant was

that the incorrect numbers read by the trial court, which were also contained in the written instructions the jury received, referred to nonexistent or inapplicable crimes.[3] He maintains that by giving the wrong numbers for the pertinent Penal Code sections, the trial court misstated the law and thereby misdirected the jury on a key element of the offense.[4] Sneed asserts the court's error was compounded by the prosecutor's use of the same incorrect Penal Code sections in arguing to the jury.

While the instruction did not state the correct numbers for the Penal Code sections of the pertinent predicate offenses element of the crime of failing to register, we find the error to be harmless beyond a reasonable doubt. "[W]e may affirm despite the error if the jury that rendered the verdict at issue could not rationally have found the omitted element unproven; the error is harmless, that is, if the record contains no substantial evidence supporting a factual theory under which the elements submitted to the jury were proven but the omitted element was not. [Citation.]" (*People v. Sakarias* (2000) 22 Cal.4th 596, 625.) It is clear from the record, the instruction referred to the predicate offenses of forcible rape and forcible oral copulation. The certified abstract of judgment for the 1989

---

previously convicted of Penal Code, section 261.2 and 288(A): [¶] 2. The defendant resided in Los Angeles, California; [¶] 3. The defendant actually knew he had a duty under Penal Code, section 290 to register as a sex offender, and that he had to register within five working days of being released from incarceration; [¶] AND [¶] 4. The defendant willfully failed to register as a sex offender with the police chief of that city or the sheriff of that county within five working days of being released from incarceration. . . ." (CALCRIM No. 1170.)

[3] In 1988 the year Sneed committed the predicate offenses, the crime of forcible rape was defined in Penal Code, section 261, paragraph (2), and forcible oral copulation was defined in Penal Code, section 288a, subdivision (c). Penal Code section 288, subdivision (a) refers now as it did in 1988 to the offense of lewd acts with a child under the age of 14 years.

[4] The People argue Sneed has forfeited this claim of instructional error by failing to object in the trial court. However, because Sneed's position is the challenged instruction misstated the elements of the offense, he did not have to raise the issue at trial, and we review his claim on the merits. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.)

convictions, which the prosecution introduced into evidence, listed the predicate convictions as count 1, Penal code, section "288(A) forcible oral copulation" and count 3, Penal Code, section "261.2 forcible rape." The trial court modified the relevant jury instruction (CALCRIM No. 1170) so that it would match the Penal Code sections, as they appeared in the abstract of judgment. In arguing to the jury, the prosecutor named the alleged predicate offenses and maintained the abstract of judgment and accompanying evidence showed Sneed was previously convicted of forcible rape and forcible oral copulation. More importantly, Sneed did not challenge the evidence of the convictions during trial or in arguing to the jury.[5] While it would have been preferable for the instructions to have stated the correct Penal Code sections, the inclusion of the wrong Penal Code sections did not prejudice Sneed, in light of the undisputed evidence of the prior sex-related convictions requiring him to register under Penal Code section 290.

### DISPOSITION

The judgment is affirmed.


**WOODS, J.**


**We concur:**


**PERLUSS, P. J.**                    **JACKSON, J.**

---

[5]     Sneed successfully argued the amended information incorrectly alleged a violation of Penal Code section 286, subdivision (d) as a prior conviction because it had been dismissed as part of a negotiated plea.