Filed 1/30/14  P. v. Stuart CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TORY DWANELL STUART,<br><br>    Defendant and Appellant. | F063514<br><br>(Super. Ct. No. F10903408)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  James M. Petrucelli, Judge.

Geoffrey M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Gomes, J. and Kane, J.

Defendant Tory Dwanell Stuart was convicted of assault with a deadly weapon. He now argues that the trial court abused its discretion in denying three of his motions for substitution of counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). We disagree.

## *FACTS AND PROCEDURAL HISTORY*

Stuart confronted Mike Brown in front of Brown's apartment on May 6, 2010. An accomplice stood behind Brown and placed him in a choke hold. Stuart hit Brown with a large piece of wood. Brown was knocked unconscious and the two men continued to beat and kick him as he lay on the ground. Neighbors appeared and the assailants fled. Brown was hospitalized. He had several facial fractures, some lacerations, a swollen thigh, and a dislocated wrist. His injuries required surgery.

The district attorney filed an information charging Stuart with two counts: (1) attempted murder (Pen. Code, §§ 187, 664)[1] and (2) assault with a deadly weapon (§ 245, subd. (a)(1)). For both counts, the information included allegations that Stuart personally inflicted great bodily injury. (§ 12022.7, subd. (a).)

On April 4, 2011, a jury found Stuart not guilty of count 1 and a mistrial was declared on count 2. On July 5, July 29 and August 16, 2011, before the retrial on count 2, the trial court conducted *Marsden* hearings at Stuart's request.

At the July 5 hearing, Stuart testified that he believed he and his trial counsel, Amy Guerra, had a breakdown in communication, they could not work together, and he did not trust her. He claimed that the only opportunities he had to talk to her about the case were when he came to court. He also felt Guerra had not conducted an adequate investigation because witnesses he had mentioned to her and her investigator had not been located.

---

[1]Subsequent statutory references are to the Penal Code unless otherwise noted.

Guerra confirmed that she and Stuart had not spoken in a "couple weeks." In the time since the first trial, she had seen him "a couple times." Most of the witnesses Stuart referred to were witnesses he had mentioned before the first trial and whose value to the defense related to premeditation and other issues bearing upon the charge of attempted murder, issues that would not come up in the second trial. Guerra was in the process of retaining an expert witness whom "Mr. Stuart I know feels is necessary, and I feel is necessary." Guerra said, "I don't think we've had a breakdown in communication."

The court questioned Stuart further. It asked whether he had given Guerra any names of additional potential witnesses since the first trial. Stuart did not answer the question directly. He mentioned one witness whose name was mentioned by another witness at the first trial. Regarding another witness, Stuart first said that he had known of this witness before the first trial and told Guerra of him, and then said he had never had a chance to tell Guerra about him.

Stuart said Guerra was "acting like a surrogate DA." The court pointed out that Guerra had gotten Stuart acquitted of attempted murder at the first trial and asked how that was acting like a surrogate D.A. Stuart replied that it was Guerra's fault that the attempted murder charge had not been dismissed before the first trial.

The court denied the *Marsden* motion. It said that the only basis Stuart asserted for his claims that he and Guerra could not work together was that "you told me that she hasn't seen you in a couple weeks, and she hasn't done a proper investigation, and I'm not hearing anything more than that, or any other good reason to grant your Marsden request."

At the July 29 hearing, Stuart repeated his assertions that he had a breakdown in communication with Guerra, that she failed to investigate witnesses he had described, and that she did not visit him often enough. He said that two weeks earlier, Guerra had said she was tired of him and "stormed out" of a jail visit. Further, she gave inconsistent advice, saying on one occasion that he had a strong case and on another that he should

3.

accept a plea offer. He claimed she "talked against me" and "basically called me a liar" before the court, apparently referring to her statements at the previous hearing to the effect that his leads on witnesses were generally not useful for purposes of the second trial. He said that, even though the trial was set for August, he still did not know what trial strategy Guerra would be using. Stuart also felt that Guerra's progress in retaining an expert witness and obtaining records was too slow.

The court questioned Guerra. She said she had always followed up on Stuart's requests for investigation. She and her investigator had pursued his leads before the first trial and had located one witness. He did not give additional leads after the first trial and had refused to cooperate further with Guerra's investigator.

Guerra was still working on retaining an expert witness. The witness would be an ophthalmologist, who would testify about Stuart's vision in support of his claim of self-defense. Guerra had obtained Social Security records indicating that Stuart was legally blind. The court had allowed Stuart to be examined by an ophthalmologist, who could not confirm that Stuart was legally blind and believed he was malingering. Stuart told Guerra he wanted another opinion from a neuro-ophthalmologist, as his vision problem was neurological. Guerra was still attempting to retain a neuro-ophthalmologist.

Guerra admitted she had argued with Stuart at a meeting two weeks earlier. Guerra came to the meeting with an investigator so that Stuart could explain what he wanted done in the investigation, but Stuart refused to speak to the investigator. Guerra never said she was tired of Stuart, but she did say she was tired of coming to the jail only to have him refuse to speak with her.

Guerra did not give Stuart inconsistent advice. Before the first trial, she correctly predicted Stuart would prevail on the attempted murder charge. After the first trial, she recommended accepting a plea offer because she believed he would not, at a retrial, prevail on the assault charge. Eleven jurors had voted to convict on that charge at the first trial, and the 12th had "refused to deliberate" because he "did not believe in assault."

Guerra conceded that she was "a little resentful about being held hostage to Mr. Stuart's [constant] Marsden hearings .…" She believed she could communicate with Stuart in spite of this, and mentioned as an example that she had joked with Stuart during the first trial even though he had made a Marsden motion on the first day of that trial. Consequently, she felt there was no breakdown in communication.

The court denied the motion. It said it "doesn't find any lack of confidence, no contrary interest being demonstrated by the attorney, no substantial breakdown in the relationship to the point where Ms. Guerra [cannot] adequately represent Mr. Stuart."

At the August 16 hearing, Stuart testified that there was a breakdown in communication between him and Guerra and also that Guerra was ineffective. Regarding the breakdown in communication, Stuart repeated that Guerra had stormed out of a visit. He also was dissatisfied because he felt surprised when, the previous day, she informed him about "a lot of things" regarding the trial that they had not previously discussed. He apparently believed he should have heard about some of these things sooner. Stuart felt Guerra was ineffective because he had been in custody for 13 months, his records from Social Security had taken a long time to arrive, and Guerra still had not retained an expert who would say his vision was impaired.

Guerra testified that she had been making persistent efforts to have a neuro-ophthalmologist review Stuart's records, but that the doctor's office she was working with had been dilatory. The delay in obtaining the Social Security records was caused by the Social Security Administration's regulations. Regarding the asserted breakdown in communication, Guerra testified that Stuart had made *Marsden* motions at least 10 times over the course of her representation of him and that this "doesn't bode well for the best communication"; but she still believed there was no breakdown in communication apart from Stuart's refusal to speak to her or her investigator on some occasions.

The court denied the motion. It found that there was no breakdown in communication serious enough to prevent Guerra from representing Stuart effectively. It

also found that there were no grounds for concluding Guerra had not been representing Stuart effectively and diligently.

At the end of the second trial, on September 2, 2011, the jury found Stuart guilty of assault with a deadly weapon and found the great-bodily-injury allegation true. The court sentenced Stuart to four years, the upper term, for assault with a deadly weapon, plus three years for the injury enhancement, a total term of seven years.

## *DISCUSSION*

*Marsden* established the right of a criminal defendant, based on the Sixth Amendment right to the assistance of counsel, personally to seek a substitution of appointed counsel by making a motion in the trial court. (*Marsden, supra*, 2 Cal.3d at pp. 123-126.) The defendant is entitled to relief if he shows that counsel "is not providing adequate representation" or that the "defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result …." (*People v. Crandell* (1988) 46 Cal.3d 833, 854, overruled on other grounds by *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.) Stuart's claim is that his motion should have been granted because he established that he and Guerra were embroiled in an irreconcilable conflict.

We review the trial court's decision for abuse of discretion. (*People v. Cole* (2004) 33 Cal.4th 1158, 1190.) We can reverse only if denial of the substitution would substantially impair the defendant's right to effective assistance of counsel. (*People v. Smith* (2003) 30 Cal.4th 581, 604.)

On appeal, Stuart argues that there was an irreconcilable breakdown in communication because Guerra met with him infrequently and he felt he had little opportunity to contribute to, and little knowledge of, the strategy being adopted for his defense. He points to his testimony that Guerra stormed out of a meeting with him.

Guerra, however, testified that when she met with Stuart, he often refused to speak with her. Guerra brought an investigator to visit Stuart and hear his suggestions for the

investigation, but Stuart declined to participate. Guerra admitted she left a meeting because of this behavior, saying the meetings were a waste of time if Stuart did not participate.

The trial court could reasonably find that Guerra gave the more credible account (*People v. Abilez* (2007) 41 Cal.4th 472, 488), and on that basis could reasonably conclude that Stuart was responsible for any deficiencies in the communication between him and Guerra. It is settled that a defendant cannot establish a right to substitution of counsel by willfully refusing to cooperate with his appointed attorney. (*People v. Roldan* (2005) 35 Cal.4th 646, 682, overruled on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Stuart also maintains that the substitution should have been granted because he lost trust in Guerra. A defendant's subjective lack of trust, standing alone, cannot support the grant of a *Marsden* motion. (*People v. Memro* (1995) 11 Cal.4th 786, 857.) "[I]f a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law." (*People v. Crandell, supra*, 46 Cal.3d at p. 860.) To the extent that Stuart's lack of trust arose from his sense of receiving insufficient communication about the case, the trial court could reasonably find that Stuart's own willful behavior was the cause of that sense, as we have said.

Next, Stuart says that the course of events regarding the use of a medical expert shows that he had a reasonable basis for mistrusting Guerra. Guerra told the court she believed testimony by an ophthalmologist would be an important part of the defense, but at trial she did not call any such expert. Stuart says this substantiates his claim that Guerra did not keep him informed and he never knew what the trial strategy would be.

7.

We do not see how the choices defense counsel made during the trial could contribute to a lack of trust experienced by Stuart at the time of the pretrial motions here in question. Further, Stuart has not established that the ultimate decision not to use an ophthalmological expert was not a reasonable tactical decision. One ophthalmologist had already examined Stuart and found him to be malingering. Tactical disagreements between counsel and client do not compel substitution of counsel. (*People v. Dickey* (2005) 35 Cal.4th 884, 922.)

Finally, Stuart contends that his mistrust was reasonable because Guerra "called [him] a liar" before the court. Stuart never explains when Guerra called him a liar, but he appears to be referring to Guerra's statements that his suggestions for the investigation did not lead her to witnesses who would have been helpful to the defense in the second trial. Stuart's claim about being called a liar, therefore, is really only a statement of his disagreement with Guerra over the tactics she chose for defending him. This kind of disagreement is not, as we have said, grounds for substitution of counsel.

For all these reasons, we conclude that the trial court did not abuse its discretion in denying Stuart's *Marsden* motions.

## *DISPOSITION*

The judgment is affirmed.