Filed 10/7/22  P. v. Venegas CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075326 |
| v. | (Super.Ct.No. SWF1707731) |
| SALVADOR VENEGAS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Davis, Judge.  Reversed.

Sharon G. Wrubel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Christine Y. Friedman, Jennifer B. Truong and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

1

In March 2018, a jury found defendant, Salvador Venegas, guilty of assault with force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4))[1] and battery causing serious bodily injury (§ 243, subd. (d)). The trial court found true the allegations that defendant had suffered two prior strike convictions (§§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(a)) and one prior serious felony conviction (§ 667, subd. (a)).

The trial court trailed defendant's sentencing behind defendant's separate death penalty trial, so that there could be a single sentencing hearing for the two cases. In June 2020, in the instant case, the trial court sentenced defendant to prison for a determinate term of five years and a consecutive indeterminate term of 25 years to life.

During the trial, defendant was self-represented. Defendant contends that the judgment must be reversed because, when advising defendant about the risks of self-representation, the trial court misinformed defendant regarding the maximum prison sentence to which defendant was exposed in this case. We reverse the judgment.

**PROCEDURAL HISTORY**

A.     PROCEEDINGS PRIOR TO FEBRUARY 22, 2018

1.     *COMPLAINT*

The felony complaint against defendant was filed on October 30, 2017. The complaint did not allege any prior convictions. On October 31, 2017, the Honorable

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Mark A. Mandio presided over the arraignment on the complaint, and the following exchange occurred:

The Court: "You do not want me to appoint you an attorney?

"The Defendant: No, Your Honor. I want to proceed pro per.

"The Court: You want to represent yourself in this case, too?

"The Defendant: Yes, Your Honor.

"The Court: And you are already representing yourself in another case; right?

"The Defendant: Yes.

"The Court: All right. I don't think I need to go through the *Faretta*[2] advisement twice. So we'll show you as your OWN attorney representing yourself."

Defendant was self-represented at his preliminary hearing on December 15, 2017.

### 2. *ORIGINAL INFORMATION*

The original information was filed against defendant on January 2, 2018. The original information did not allege any prior convictions. On January 5, 2018, defendant was arraigned on the original information. During that arraignment, the trial court, with the Honorable Anthony Villalobos presiding, asked defendant, "And, sir, you understand your rights in this matter?" Defendant responded, "I do, Your Honor." The trial court did not mention the issue of self-representation. (§ 987, subd. (a).)

---

[2] *Faretta v. California* (1975) 422 U.S. 806, 834-835.

3

B.    FEBRUARY 22, 2018

1.    *FIRST AMENDED INFORMATION*

On February 22, 2018, the People filed a first amended information (FAI). The FAI included allegations of prior convictions as follows:

"**SERIOUS PRIOR OFFENSE**

"It is further alleged that the defendant, SALVADOR VENEGAS was on or about 08/21/2000 in the Superior Court of the State of California, for the County of Los Angeles, convicted of the crime of, ATTEMPTED MURDER, a serious felony, in violation of section 664/187, subdivision (a) of the Penal Code, within the meaning of Penal Code section 667, subdivision (a).

"**STRIKE PRIORS—667(c) & (e)(2)(A) and 1170.12(c)(2)(a)**

"It is further alleged that prior to the commission of the offense(s) charged herein the defendant, SALVADOR VENEGAS, was convicted of two or more serious and violent felonies, within the meaning of Penal Code sections 667, subdivisions (c) and (e)(2)(A), and 1170.12, subdivision (c), subsection (2)(a), to wit:

"**FIRST PRIOR**, a conviction on or about 08/21/2000 in the Superior Court of the State of California, for the County of Los Angeles, for the crime of ATTEMPTED MURDER, in violation of Penal Code section 664/187, subdivision (a), and

"**SECOND PRIOR**, a conviction on or about 08/21/2000 in the Superior Court of the State of California, for the County of Los Angeles, for the crime of ATTEMPTED MURDER, in violation of Penal Code section 664/187, subdivision (a)."

## 2. *HEARINGS*

At 8:55 a.m. on February 22, 2018, the trial court, with the Honorable John M. Monterosso presiding in Department S201, held a hearing on defendant's request for a continuance. The trial court denied the motion, set the jury trial for that same day, and reassigned the case to Department S202.

At 11:02 a.m. on February 22, 2018, the trial court, with the Honorable John M. Davis presiding, called the case. At the beginning of the hearing, the following exchange occurred:

"The Court: SWF1707731. And the prosecutor is present, and the defendant is pro per. And I'm assuming that all the pro per information has been done, the request by the defendant, and the filling out of the forms and all of that, and the discussion?

"[Prosecutor]: I believe so, yes.

"Defendant Venegas: I have, Your Honor."

Despite the indication that a discussion about self-representation had already occurred, the trial court said it felt "obligated to warn [defendant] again because now we're on the eve of trial." As the trial court described the disadvantages of self-representation, it said, "So it really does put you at a disadvantage. And when you're talking about—and like I said, I don't really know the . . . facts here. But when you're talking about alleged crimes of violence done by you, then you're also talking about considerable time, especially if you have a criminal record."

After more comments by the trial court, the following discussion occurred:

5

The Court: "So by all of this, what I'm trying to say is you should reconsider representing yourself. First of all, did you understand everything I said?

"Defendant Venegas: I did, Your Honor.

"The Court: Okay. And is it still your choice to go forward pro per in this trial?

"Defendant Venegas: At this point, yes. I have just been served an amended Information.

"The Court: All it did is add a strike. It added a strike.

"Defendant Venegas: Yes.

"The Court: So that changes your sentencing structure.

"Defendant Venegas: Absolutely.

"The Court: —in what you're—you know, they probably talked to—somebody has probably talked to you at some point about your maximum exposure. And in this case, you know, I don't know what was told to you before what the maximum exposure was. But once there's a strike added to your Information, that basically doubles what— not always, but it's sometimes more, sometimes less, but basically doubles the possibility of what the years are that you could be sentenced to as a maximum."

After a discussion concerning defendant's opportunity to conduct legal research in the jail, the dialogue continued as follows:

The Court: "[Y]ou would be able to look up hopefully by Monday what it means to add a strike to your Information. But just in general terms, it doubles the exposure you have. It doesn't mean that that would be imposed. It just—that depends on the facts of the case and your criminal history. And I don't really know either one of those

6

things at this time. I'm just advising you in general. [¶] And so first of all, do you understand what I said about this—your strike being added?

"Defendant Venegas: I do, Your Honor. I do as far as the repercussions.

"The Court: Yes. We can argue about the strike itself.

"Defendant Venegas: Okay.

"The Court: And then that's something I'll give you a chance to do. But I'm just saying that's the general—if it's kept—and I'm not ruling that—because I don't know anything about it at this point. I'm just saying if it's kept, whatever you are looking at suddenly becomes more serious. And so that should also factor into whether you want to complete—continue representing yourself.

"Assuming that it is just wors[t] case scenario for you—and like I said, I'm not ruling because I haven't heard any of the factors at all about anything. If it was kept on, and if you were convicted, and that was found to be a true strike prior, then you're looking at a significant amount of time. [¶] And so I just wanted you to reconsider representing yourself in light of this. Do you recall what you were told was your exposure before this?

"Defendant Venegas: I have not. It's my understanding it's two or four years.

"[Prosecutor]: With the 243(d) and the 245(a)(4) are 654 [*sic*], meaning that you would only be sentenced on one of them. So the upper term on a 245 is four years times two is eight years. And I didn't add any GBI allegation or anything in that regard.

"The Court: So four years to eight years?

"[Prosecutor]: Correct.

7

"The Court: So anyway, that's kind of the ballpark at least for you to consider."

After a discussion of defendant's death penalty case, which was also pending at that time, the following exchange occurred:

The Court: "I'm very willing to go forward with you in pro per status if that's what you want to do.

"Defendant Venegas: Yes, Your Honor.

"The Court: You do?

"Defendant Venegas: I do, Your Honor."

The court went on to discuss trial logistics. The court said it would arraign defendant on the FAI, and the following exchange occurred:

The Court: "But as to the amended Information, have you received the amended Information?

"Defendant Venegas: I just have, Your Honor.

"The Court: And have you—do you see the difference between the old Information and the new Information?

"Defendant Venegas: I do, Your Honor.

"The Court: Okay. And I've told you what the ramifications of that is, the sentencing difference is that you might be looked at—looking at based on this allegation—the prior allegations being added. And let me see if—is the only thing that was added the strike prior?

"[Prosecutor]: Yes, Your Honor."

There was further discussion of trial issues and logistics, and then the court recessed for a lunch break. When the proceedings resumed, the trial court said it was unable to find a written *Faretta* petition in the court file, so it asked defendant to initial and sign the form petition indicating that he wanted to be self-represented. (Riverside County Sup. Ct. Form RI-OTS08.) The written petition did not provide any information about the maximum sentence in the case. Defendant agreed to sign the form, and the following discussion ensued:

"The Court: And now, [defendant], did you understand what you read and signed?

"Defendant Venegas: I did, Your Honor.

"The Court: Okay. Do you need any[]more time with the form before we go forward?

"Defendant Venegas: I do not, Your Honor.

"The Court: Okay. Now, I want to arraign you on the amended Information. So I have in my hand an amended Information. The amended Information has a Count 1 of a 245(a) felony by force likely to produce great bodily injury. I believe that was in the prior one. So why don't you get out your amended Information. [¶] Okay. You have the one that says amended Information?

"Defendant Venegas: I do, Your Honor.

"The Court: Okay. So it's a Count 1 of a 245(a)(4), commit assault upon [the victim] by force likely to produce great bodily injury. Count 2, a 243, did unlawfully use force upon the person of [the victim], inflicting thereby serious bodily injury. And

9

then it's got several different ways of listing the attempted murder—well, there's—I guess it was two attempted murders.

"[Prosecutor]: Two victims.

"The Court: Two victims.

"[Prosecutor]: Yes.

"The Court: In the past?

"[Prosecutor]: Yes.

"The Court: Okay. So then there's these attempted murders. And it's—one is alleged as a serious prior. That has to do with the sentencing, whether or not you're eligible for probation and things like that. And then there's a strike prior, which is using the same case because it was two or more of those serious and violent felonies, which is what I told you before. Basically it would double your sentence.

"Also, you would now have two strikes. And if you commit a third strike, you could be looking at 25 to life after—if you are convicted in this case. Do you understand that?

"Defendant Venegas: Yes, Your Honor.

"The Court: Okay. And then they have the priors listed, which are two priors, but both being convicted on 8/21/2000. Do you understand the information—the amended Information?

"Defendant Venegas: I do, Your Honor.

"The Court: Okay. And do you waive reading of any further than I already did—waive any further reading of it?

10

"Defendant Venegas:  I do waive it, Your Honor.

"The Court:  Okay.  And so we will show that you have been arraigned on the amended Information and that you understand it."

C.     TRIAL AND POSTTRIAL

Defendant was self-represented during his jury trial and the bifurcated court trial on the prior conviction allegations.  On March 16, 2018, Judge Davis presided over the court trial on the prior conviction allegations.  At the start of the bifurcated trial, the court said, "And just so the record is clear, I have a copy of the First Amended Information, which I assume is what we're going off of, and that—there is an allegation of a serious prior offense being the attempted murder, which it says was 8/21/2000 in Los Angeles, and they're both strikes, of course.  And then they're alleged as a first prior and second prior separately."  After the close of evidence, the trial court said, "I do find that these are valid priors and—both of them.  They're strike priors, and they're serious priors.  I do find them to be valid."

On June 22, 2018, the trial court conducted a hearing as to whether defendant's sentencing in the instant case would trail behind defendant's death penalty case.  There was a discussion as to whether defendant would want a probation report in the instant case because defendant's attorney in the death penalty case might not want defendant interviewed.  The prosecutor asserted, "I don't know that we necessarily need a sentencing report because it's a three strikes case, so the Court's required to sentence him to 25 to life anyway on this case."

11

The trial court responded, "I mean, you know, counsel states that the 25 to life is mandatory, and I'm—I don't disbelieve you, but I haven't heard from the defendant on that issue." The trial court asked defendant if defendant was requesting to trail his sentencing behind the death penalty case, and defendant confirmed that was his request. The court then asked defendant if he waived being sentenced by the trial judge in the instant case, so that he could be sentenced by the judge in the death penalty case, and the following exchange occurred:

"The Defendant: I think I would like a continuance to confer with my attorney [in the death penalty case] about that because I didn't talk to him about this case particularly, and considering that the People have stated that this is a three strikes case, and I—

"The Court: What?

"The Defendant: That this is a three strikes case so I could be subject to a life sentence, I would like a chance to talk to my attorney to see what—if I should seek that or if I should seek counsel at sentencing, because it's my understanding that I could still—I still have the opportunity to seek counsel for sentencing. So that's something I would—definitely would like to discuss with my attorney on my death penalty case."

The trial court continued the matter. On August 22, 2018, defendant agreed that he could be sentenced by a different judge.

D.    MOTION FOR COUNSEL

On September 26, 2018, defendant moved for counsel to be appointed. In the motion, defendant asserted, "Prior to trial, the court inquired about defendant's potential

12

exposure on the case cited above, the People on behalf of Ms. Garcia[3] [*sic*] stated that the max was 8 years. [¶] However, the People have elected to seek a 25-life sentence due to defendant's potential eligibility as a third strike candidate." Defendant asserted the trial court should appoint " 'counsel to investigate possible grounds for a motion for a new trial.' " On October 12, 2018, the trial court, with the Honorable Kelly L. Hansen presiding, appointed conflict counsel to represent defendant. Ms. Demi Tolbert (Defense Counsel) was appointed to represent defendant in the instant case.

### E.     SENTENCING HEARING

Defendant was found guilty in the capital case. On December 18, 2018, the jury in the capital case fixed the penalty at life without the possibility of parole.

Defendant's sentencing hearing in the instant case took place on June 30, 2020, with the Honorable Otis Sterling, III, presiding. At the hearing, defendant was represented by Defense Counsel. At the start of the hearing, Defense Counsel stated that she did not have complete transcripts for the trial in the instant case, but she believed there was a basis for a motion for new trial.

Defense Counsel said, "I have pulled the transcript from the date that [defendant] was arraigned on this first amended information on February 22nd, 2018, and it was before Judge Davis. And about approximately 20 pages, both Judge Davis and the prosecutor advised [defendant], who was pro per on that date, that this amended information only added a strike—singular. It added a strike. Then both the Court and

---

[3] Ms. Jennifer Garcia was the prosecutor in the instant case.

13

the prosecutor go on to explain the maximum commitment, for [defendant's] benefit, to adding a strike. [¶] And throughout this entire transcript, they both reiterate that it basically doubles his sentence. They talk about a maximum of maybe eight years. Then [the prosecutor] indicates that, 'No. It wouldn't be eight years; it would be less than that because the two counts are just an alternative charging, and they would be 654.' Then the Court clarifies with [the prosecutor], and he says, 'So the maximum exposure would be four to eight years?' She says, 'Correct.' "

Defense Counsel asserted the FAI was confusing because it did not indicate that there were two victims for the alleged prior convictions, which shared the same date. Defense Counsel asserted that defendant decided to proceed as self-represented "based on the sum and substance of what was told to him and explained to him by a judge and an experienced prosecutor, contemplat[ing] that he was facing a single strike." Defense Counsel made an oral motion for the trial court to strike one of the prior strike convictions so that defendant would be sentenced with a single prior strike conviction. Defense Counsel asserted that if the trial court denied that motion, then the matter should be continued so that a motion for new trial could be filed after the complete trial transcripts were obtained.

The prosecutor asserted that the FAI alleged two prior strike convictions and defendant was arraigned on the FAI. The prosecutor asserted the FAI arraignment transcript reflected there were two victims for the two prior attempted murder convictions. The prosecutor also pointed to the portion of the transcript in which Judge Davis said, " 'Okay. So then there's these attempted murders, and it's one is alleged as

14

a serious prior. That has to do with sentencing, whether or not you're eligible for probation and things like that, and then there's a strike prior, which is using the same case because it was two or more of those serious and violent felonies, which is what I told you before. Basically, it would double your sentence. Also, you would now have two strikes. And if you commit a third strike, you could be looking at 25 to life after— if you are convicted in this case. Do you understand?' To which [defendant] responded, 'Yes, Your Honor.' "

The trial court found that the FAI clearly alleged two prior strike convictions, and that, based on the portion of the transcript quoted by the prosecutor, the court did not "see there was any confusion as to what [defendant] was being charged with . . . . All of that seems pretty clear." The trial court denied the motion to strike one of defendant's prior strike convictions and concluded a motion for new trial would be untimely.

In response, Defense Counsel said, "[The prosecutor] tells the pro per defendant that his exposure is four to six years on this case. Clearly, she is not telling him correctly. What was he supposed to do?" Defense Counsel asserted it was unconscionable to advise a defendant that his exposure was four to six years and then seek a life sentence. Defense Counsel argued there was legal cause to not sentence defendant because complete transcripts of the trial were not yet available and "it appears that [defendant] was advised by the judge and the prosecutor that he was not a three-striker."

The trial court said that if defendant were wrongly advised of his maximum exposure, then that was cured when defendant was given a copy of the FAI and arraigned on the FAI because the defendant was "provided a document that clearly spells out what it is he's going forward on and what it is he's facing should he decide to go forward."

Defense Counsel said, "So you're saying that because a judge in a black robe sitting on an elevated platform[] tells him his exposure is four to six years and the prosecutor who's bringing the charges agrees it's four to six years, but because this man who does not have a college or law degree is handed a piece of paper that says that there are strike priors and there's a first prior and a second prior but it's really kind of the same as the serious prior, that he is supposed to figure that all out and say to himself, 'I'm really a three-striker. Forget about what that elevated judge and district attorney said.' "

The trial court responded, "Yeah. I don't want to get into a debate about this. But I don't think you're giving [defendant] enough credit." Defense Counsel asserted the trial court was improperly placing the burden on defendant when "the burden to give accurate information [is] on the man in the black robe and the prosecutor." The trial court replied, "I don't want to get into a debate about this." Defense Counsel again said there was legal cause to not proceed with sentencing.

The trial court concluded that "at the time that the judge arraigns him on that information, he's clearly aware of what he's facing when he goes forward to trial, both in terms of the substantive offenses and the allegations of the prison priors and the strike

16

priors. . . . So I don't see there's any legal cause to continue this for the purposes of evaluating whether or not [defendant] was not informed properly. So your motion to continue it is denied." The trial court sentenced defendant to a determinate term of five years and a consecutive indeterminate term of 25 years to life.

**DISCUSSION**

A.    KNOWING WAIVER

Defendant contends the judgment must be reversed because he did not knowingly waive his right to counsel due to the trial court and the prosecutor misinforming defendant that his maximum sentencing exposure was eight years when it was actually 30 years to life.

" 'A criminal defendant has a right, under the Sixth Amendment to the federal Constitution, to conduct his own defense, provided that he knowingly and intelligently waives his Sixth Amendment right to the assistance of counsel.' " (*People v. Burgener* (2009) 46 Cal.4th 231, 240-241.) "In deciding whether a waiver is knowing . . ., we examine the record as a whole to see whether the defendant actually understood the consequences and import of the decision to waive counsel . . . . [Citation.] There is no prescribed script or admonition that trial courts must use in warning a defendant of the disadvantages of self-representation. But, in whatever way the trial court chooses to explain the perils of self-representation, the record as a whole must establish that the defendant understood the 'dangers and disadvantages' of waiving the right to counsel, including the risks and intricacies of the case." (*People v. Mickel* (2016) 2 Cal.5th 181, 211-212 (*Mickel*).)

17

One of the risks presented by a case is the possible penalty. (See *People v. Riggs* (2008) 44 Cal.4th 248, 278 ["[T]he record shows defendant understood the possibility of a penalty phase of the trial that might result in a sentence of death. Accordingly, we conclude defendant adequately was made aware of the ' "disadvantages of self-representation, including the risks and complexities of the particular case," ' and that he made his choice to waive counsel with ' " 'eyes open.' " ' "]; see also *People v. Frederickson* (2020) 8 Cal.5th 963, 1004 ["During the oral colloquy, defendant affirmed his awareness that he faced 'murder with special circumstances and [that] the maximum term is the death penalty.' [¶] . . . The court's inquiry was sufficient"]; see also *People v. Noriega* (1997) 59 Cal.App.4th 311, 319 ["The trial court gave no specific warnings or advisements regarding the risks and dangers of self-representation. The court did not inquire whether appellant understood . . . the potential penal consequences if he lost at trial"])

Because a defendant needs to know the risks of self-representation, the Supreme Court advised: "While many defendants will know the potential sentences they face while waiving representation, it is valuable for trial courts—as a routine practice—to orally review during a *Faretta* colloquy the potential sentence a defendant faces." (*Mickel*, *supra*, 2 Cal.5th at p. 212.)

This court has also advised that, during the *Faretta* colloquy, trial courts should discuss with defendants "possible punishments" because such an advisements "will serve to point up to [a] defendant just what he is getting himself into and establish

18

beyond question that ' "he knows what he is doing and his choice is made with eyes open." ' " (*People v. Lopez* (1977) 71 Cal.App.3d 568, 573.)

" 'A defendant may challenge the grant of a motion for self-representation on the basis the record fails to show the defendant was made aware of the risks of self-representation.' " (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 546-547 (*Sullivan*).) " 'The burden is on the defendant to demonstrate he did not knowingly and intelligently waive his right to counsel.' [Citations.] On appeal, the courts 'review the entire record—including proceedings after the purported invocation of the right of self-representation—and determine de novo whether the defendant's invocation was knowing and voluntary.' " (*Id.* at p. 547.) The "knowing" portion of "knowing and voluntary" means " 'the defendant must "actually . . . understand the significance and consequences" of the decision.' " (*Id.* at p. 545.)

Here, the record demonstrates that defendant did not understand the consequences of his decision. The trial court told defendant that the FAI added a single strike, which meant defendant's sentence would be doubled. Defendant told the court that he believed he was facing "two or four years" in prison in this case. The prosecutor incorrectly represented that the upper term sentence would be four years, doubled to eight years. Defendant then said he would proceed without counsel.

When the trial court mentioned arraigning defendant on the FAI, the trial court asked, "[I]s the only thing that was added the strike prior?" The prosecutor replied, "Yes, Your Honor." After that false representation, defendant signed a petition for self-representation.

19

The trial court then arraigned defendant on the FAI. As the court went through the FAI with defendant the court recognized that two prior attempted murders were alleged. The court said, "one is alleged as a serious prior" and the second was "a strike prior," which "would double your sentence."

When explaining the prior serious felony allegation (§ 667, subd. (a)), the court did not mention that it would add a consecutive five-year term to defendant's prison sentence. Rather, the trial court said that the prior would cause defendant to not be "eligible for probation and things like that."

When the trial court explained the prior strike, it said, "Also, you would now have two strikes. And if you commit a third strike, you could be looking at 25 to life after—if you are convicted in this case." Thus, the court told defendant that if he were convicted in the instant case, he would have two strikes, so "if [defendant] commit[ted] a third strike" then he would be subject to a sentence of 25 years to life in the next case.

At the February 22, 2018, hearing, there was no indication that defendant was facing a sentence of 30 years to life. To the contrary, the trial court and the prosecutor told defendant that the FAI added a single strike and that he was facing a maximum sentence of eight years.

We now turn to the FAI. At the February 22, 2018 hearing, defendant said he had "just been served" with the FAI. The FAI alleged two prior strike convictions and a prior serious felony conviction. The FAI also cited the statute for a sentence of 25 years to life. (§ 667, subd. (e)(2)(A).) We examined the record to determine if defendant

researched the sentencing statute cited in the FAI and found no indication that defendant researched the statute.

Defendant told the trial court at the arraignment on the FAI that he was housed in an administrative segregation unit in the jail, which meant his legal research opportunities were "very limited." The trial court explained that inmates in administrative segregation have fewer legal research opportunities because they "have to be separated from everybody." Defendant said he had not been given an opportunity for legal research since "last Wednesday," and that statement was made on a Thursday.[4] Thus, the record indicates that defendant had legal research opportunities less than once per week. The trial court said to defendant, "[Y]ou would be able to look up[,] hopefully by Monday[,] what it means to add a strike to your Information. But just in general terms, it doubles the exposure you have."

Thus, while the FAI provided a citation that defendant could research to learn that the trial court and the prosecutor had misinformed him, there were two problems. First, the trial court suggested that defendant research "what it means to add a strike." Thus, the research topic suggested by the court was incorrect, because two strike priors were alleged, not just one. Second, defendant had limited legal research opportunities, and given the trial court's and the prosecutor's assurances that defendant was facing only eight years in prison, it seems unlikely that defendant would have used his limited research time on the topic of sentencing.

---

[4] We take judicial notice of the fact that February 22, 2018, was a Thursday. (Evid. Code, § 451, subd. (f).)

Another aspect of the FAI is that it plainly alleged two prior strikes. We considered that defendant saw the two prior strike allegations. However, there are two problems with that as well. The first problem is that it appears neither the prosecutor nor the trial judge understood the allegations in the FAI. It would be unfair to hold defendant to a higher standard than the trial judge and the prosecutor. The second problem is that, when the trial court arraigned defendant on the FAI, it said that one of the priors was being used to deny defendant probation and the second prior was being used as a strike to double defendant's sentence. So, to the extent defendant saw the two prior conviction allegations, the trial court explained them in such a way that defendant believed he was facing a maximum sentence of eight years.

At the start and the close of the bifurcated trial on the prior conviction allegations, the trial court said that the two prior convictions were both strike convictions. However, given that the trial court had explained that one conviction was being used to deny defendant probation, and the other conviction was being used to double defendant's sentence, defendant would have little reason to conclude that he was facing a sentence of 30 years to life.

At the June 22, 2018, hearing concerning whether defendant's sentencing would trail behind the death penalty case, the prosecutor said, "[I]t's a three strikes case, so the Court's required to sentence him to 25 to life anyway on this case." That was the first time a clear statement was made that the instant case involved a maximum sentence close to 30 years to life. Defendant responded by requesting a continuance to speak with the attorney in his death penalty case because the prosecutor said that defendant

22

"could be subject to a life sentence" in the instant case. In defendant's September 26, 2018, motion for counsel to be appointed, he wrote that "the People on behalf of Ms. Garcia [*sic*] stated that the max was 8 years. [¶] However, the People have elected to seek a 25-life sentence due to defendant's potential eligibility as a third strike candidate."

We find the foregoing portion of the record particularly telling in that it reveals defendant's understanding that the prosecutor elected to seek an eight-year sentence but then changed her mind and decided to seek a sentence of 25 years to life. That means that when defendant was self-represented during the jury trial and bifurcated court trial, he believed the prosecutor had chosen to seek an eight-year sentence—not 30 years to life.

In sum, the trial court and the prosecutor affirmatively misinformed defendant that he was facing a maximum sentence of eight years; neither the prosecutor nor the trial court understood the prior conviction allegations in the FAI, so it would be difficult to conclude defendant understood the allegations; defendant had limited legal research opportunities in order to discover that he had been misinformed; and the record indicates defendant held the belief that the prosecutor had decided to seek an eight-year prison sentence. Thus, the record, as a whole, indicates that defendant thought he was facing an eight-year prison term when he waived his right to counsel, which means defendant did not make a knowing waiver of counsel. (*Mickel*, *supra*, 2 Cal.5th at p. 212 ["In deciding whether a waiver is knowing . . . , we examine the record as a whole to see whether the defendant actually understood the consequences and import of the

23

decision to waive counsel."]; *Sullivan*, *supra*, 151 Cal.App.4th at p. 545 ["knowing" means a defendant actually understands the consequences of the decision to waive counsel].)

The People assert the trial court did not misinform defendant because the trial court warned it was unfamiliar with defendant's criminal history. We find the People's argument unpersuasive due, in part, to the following exchange in the trial court:

"The Court: Okay. And is it still your choice to go forward pro per in this trial?

"Defendant Venegas: At this point, yes. I have just been served an amended Information.

"The Court: All it did is add a strike. It added a strike."

The trial court was the first to offer the incorrect information about the FAI adding a single strike. If the trial court were unfamiliar with the FAI and defendant's criminal history, then the trial court should have said it could not advise defendant regarding the possible maximum sentencing exposure. By stating defendant's exposure without any such qualification, the court suggested that it knew enough about the case to do so.

Next, the People assert the trial court gave defendant accurate sentencing information. The People point to the following portion of the trial court's comments: "Okay. So then there's these attempted murders. And it's—one is alleged as a serious prior. That has to do with the sentencing, whether or not you're eligible for probation and things like that. And then there's a strike prior, which is using the same case because it was two or more of those serious and violent felonies, which is what I told

24

you before. Basically it would double your sentence. [¶] Also, you would now have two strikes. And if you commit a third strike, you could be looking at 25 to life after—if you are convicted in this case. Do you understand that?"

In the People's argument they emphasize the trial court's mention of "two priors." The trial court's mention of two priors was not helpful because the court said one of the priors was being used as a prior serious felony (§ 667, subd. (a)) and the second was being used as a strike. Thus, the trial court communicated that this was a second strike case. Reading the trial court's statement as a whole, it cannot reasonably be interpreted as a clear statement of defendant's exposure.

In the People's argument they italicize the trial court's words "if you are convicted in this case." The People assert that the trial court informed defendant he "faced a potential sentence of 25 years to life." The People are taking the trial court's words out of context. The trial court told defendant that, in this case, his sentence would be doubled, but if defendant were convicted in this case, i.e., creating a second strike, and then convicted in the future of a third strike, then he would face a sentence of 25 years to life. At no point during the arraignment on the FAI did the trial court inform defendant that he was facing a sentence of 30 years to life in this case.

Next, the People assert that, at the start of the bifurcated court trial on the prior conviction allegations the trial court correctly informed defendant that two prior strikes were alleged in the instant case. The trial court said, "And just so the record is clear, I have a copy of the First Amended Information, which I assume is what we're going off of, and that—there is an allegation of a serious prior offense being the attempted

25

murder, which it says was 8/21/2000 in Los Angeles, and they're both strikes, of course. And then they're alleged as a first prior and second prior separately."

There are at least two problems with relying on the foregoing comment by the trial court. First and foremost, the trial court did not clarify that the *sentence* defendant was facing was 30 years to life. Second, if one were listening to the trial court's comments, without the benefit of rereading the trial court's comments in a transcript, one could have reasonably understood the comments as describing two—not three—prior conviction allegations, which would be (1) one prior serious felony conviction (§ 667, subd. (a)), and (2) one prior strike conviction. As discussed *ante*, the trial court told defendant that those allegations meant defendant would be denied probation and sentenced, at most, to eight years in prison.

Next, the People assert that providing defendant with a copy of the FAI cured any misstatements by the trial court. The standard for a knowing waiver is what a defendant actually understood (*Mickel*, *supra*, 2 Cal.5th at p. 212; *Sullivan*, *supra*, 151 Cal.App.4th at p. 545; *People v. Best* (2020) 49 Cal.App.5th 747, 759), i.e., a defendant's subjective understanding (*Kidd v. Lemke* (2013 7th Cir.) 734 F.3d 696, 705). The standard is *not* what a defendant could have known or should have known. Defendant was given a copy of the FAI, but he was affirmatively misinformed by the prosecutor and the trial court regarding the sentencing consequences of the allegations in the FAI. Moreover, after the trial, defendant continued to express a belief that he was facing a maximum sentence of eight years. Accordingly, the fact that defendant was

given a copy of the FAI does not indicate that defendant actually understood he had been misinformed about the maximum eight-year sentence.

The People assert the FAI "clarified [defendant's] actual sentence exposure." The People are correct that the FAI alleged a three strikes case and cited to the statute for a three strikes sentence. The flaw is that, because the prosecutor said the maximum sentence would be eight years, defendant believed the prosecutor had elected to seek an eight-year sentence. In the motion for appointment of counsel, defendant wrote, "[T]he People on behalf of Ms. Garcia [*sic*] stated that the max was 8 years. [¶] However, the People have elected to seek a 25-life sentence due to defendant's potential eligibility as a third strike candidate." The foregoing indicates that, throughout the trial, defendant's belief was that the People had chosen to seek only an eight-year prison sentence. While defendant could have known or should have known that he was facing a sentence of 30 years to life based upon the FAI, the record indicates that defendant did not actually know he was facing a sentence of 30 years to life, which means defendant's waiver of counsel was not knowing.

The People assert defendant "elected to represent himself and validly waived his right to counsel before the trial court informed him of his potential sentence." There are two flaws in this assertion. The first flaw is that when defendant waived his right to counsel prior to the FAI, no prior convictions were alleged against him, and he believed he was facing a maximum sentence of four years. So, during those prior waivers defendant did not have an understanding of risks that were posed once the FAI was filed.

27

The second flaw is that the trial court needed to obtain a waiver of counsel from defendant during the arraignment on the FAI, and that waiver occurred after the trial court and the prosecutor told defendant that he was facing a maximum of eight years in prison. "[T]he governing statutes provided (and continue to provide) that a defendant in felony proceedings shall be advised of the right to counsel on at least two distinct occasions prior to trial: first, when the defendant is brought before a magistrate and advised of the filing of the complaint (§ 859), and second, after the preliminary examination, when the defendant is arraigned in superior court on the information (§ 987)." (*People v. Crayton* (2002) 28 Cal.4th 346, 361 (*Crayton*); see also *Sullivan*, *supra*, 151 Cal.App.4th at pp. 550-551.)

In the instant case, during the arraignment on the complaint, defendant was not advised of the risks involved in this case. During the arraignment on the original information, the trial court failed to raise the issue of self-representation. (§ 987, subd. (a).) Thus, during the arraignment on the FAI, which added prior conviction allegations, it was imperative for the trial court to accurately advise defendant of the risks of self-representation. (§ 987, subd. (a); *Crayton*, *supra*, 28 Cal.4th at p. 361.) Because defendant's prior waivers do not indicate that he waived counsel with an understanding that he could be sentenced to 30 years to life in prison, the sufficiency of the waiver taken during the arraignment on the FAI was critical.

The People assert that there is a split of authority concerning whether trial courts must inform self-represented defendants of the maximum sentencing exposure presented in a case. (*People v. Jackio* (2015) 236 Cal.App.4th 445, 450 ["the court need

28

notify the defendant only of the maximum penalty he faces"]; contra *People v. Harbolt* (1988) 206 Cal.App.3d 140, 149-150 [*Faretta* does not "mandate an advisement on possible penal consequences"]; see also *People v. Ruffin* (2017) 12 Cal.App.5th 536, 544 ["there is a split of authority in California as to whether the court must also specifically advise the defendant of the maximum penal consequences of conviction"].) The People urge us to follow the cases that do not require trial courts to inform defendants of the maximum sentencing exposure.

We need not decide whether trial courts are required to inform defendants of their maximum sentencing exposure because it is undisputed that trial courts are required to provide accurate advisements to a defendant. (*In re Moser* (1993) 6 Cal.4th 342, 352; *People v. Goodwillie* (2007) 147 Cal.App.4th 695, 734-735.) In other words, if it were optional to provide information about sentencing, then trial courts that choose to provide such information must still do so accurately. (See *People v. Castillo* (1997) 16 Cal.4th 1009, 1015 ["Even if the court has no sua sponte duty to instruct on a particular legal point, when it does choose to instruct, it must do so correctly"]; see also *People v. Barnum* (2003) 29 Cal.4th 1210, 1226 ["[A] trial court is not *required* to advise a self-represented defendant of the privilege against compelled self-incrimination. In any given case, the court remains free to provide such an advisement, so long as its words do not stray from neutrality toward favoring any one option over another. A trial court of course must proceed carefully in providing an advisement"].) Accordingly, we do not address the split of authority concerning whether trial courts are required to advise self-represented defendants of their maximum sentencing exposure.

In sum, we conclude defendant's waiver of counsel was made with the misunderstanding that he was facing eight years in prison, rather than 30 years to life, which means the "knowing" element of the waiver was not meant. We turn to the issue of prejudice.

B.    PREJUDICE

"Although the denial of a proper request for self-representation has been determined to be structural error [citation], neither the federal Supreme Court nor the state Supreme Court has decided whether the granting of a request for self-representation based on inadequate *Faretta* admonishment compels the same result. [Citations.] Our state courts that have addressed the question have applied the *Chapman*[5] harmless error standard. [Citation.] Although two California courts have applied automatic reversal following errors in allowing self-representation, the cases are readily distinguishable. In both instances the defendants received *no* self-representation warnings at all before being allowed to proceed without counsel." (*People v. Bush* (2017) 7 Cal.App.5th 457, 475; see also *People v. Burgener*, *supra*, 46 Cal.4th at p. 244.)

In *Crayton*, our Supreme Court concluded that the requirement to readvise a defendant of the right to counsel at the arraignment on the information (§ 987) is a statutory "prophylactic safeguard." The high court concluded that the "failure to obtain a new and clear indication that the defendant desired to represent himself or herself at

---

[5]  *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).

30

trial" was subject to harmless error review under the standard of *People v. Watson* (1956) 46 Cal.2d 818. (*Crayton*, *supra*, 28 Cal.4th at pp. 364-365.)

*Crayton* is distinguishable because the record of defendant's arraignment on the complaint does not include any advisements of the risks of self-representation prior to taking defendant's waiver of counsel, and, at the arraignment on the original information, no advisements were given and no waiver was taken. Thus, the arraignment on the FAI is the first instance in the record in which advisements were given by the trial court, i.e., it was the first time defendant was informed of the risks and consequences associated with the instant case. As a result, we do not view the advisements and waiver of counsel taken at the arraignment on the FAI to be a second or "prophylactic" waiver that was only necessary under state law. Therefore, we apply the *Chapman* standard. (*People v. Bush*, *supra*, 7 Cal.App.5th at p. 477.)

Under the *Chapman* standard, "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." (*Chapman*, *supra*, 386 U.S. at p. 24.) We examine whether defendant would not have waived counsel "had the trial court given a proper advisement." (*In re Moser*, *supra*, 6 Cal.4th at p. 352; *Berman v. Cate* (2010) 187 Cal.App.4th 885, 900.)

At the hearing on June 22, 2018, the prosecutor said, "[T]he Court's required to sentence him to 25 to life anyway on this case." Defendant then requested a continuance so he could speak with an attorney because the prosecutor had announced that defendant "could be subject to a life sentence." On September 26, 2018, defendant

moved for counsel to be appointed. In the motion, defendant asserted, "Prior to trial, the court inquired about defendant's potential exposure on the case cited above, the People on behalf of Ms. Garcia [*sic*] stated that the max was 8 years. [¶] However, the People have elected to seek a 25-life sentence due to defendant's potential eligibility as a third strike candidate." Defendant asserted the trial court could appoint " 'counsel to investigate possible grounds for a motion for a new trial.' " At the sentencing hearing, defendant was represented by counsel.

Thus, the record reflects that as soon as defendant understood that this case involved a potential life sentence, he wanted an attorney and obtained an attorney. Therefore, had the trial court correctly informed defendant, at the arraignment on the FAI, that this case involved a maximum sentence of 30 years to life, defendant likely would not have waived counsel. Accordingly, the court's error was not harmless beyond a reasonable doubt.

The People assert the trial court's misadvisement did not cause defendant to waive counsel because defendant had waived counsel prior to the trial court stating that the maximum sentence would be eight years. At the arraignment on the complaint, the trial court did not admonish defendant regarding the risks of self-representation in this case.

At the hearing on February 22, 2018, the trial court explained that, if defendant proceeded as self-represented, then defendant would be "expected to know the law and the rules of court" and the trial court would not be able to help defendant "during the course of the trial." The court also told defendant that the prosecutor in the case "is a

very experienced District Attorney. And she's done a lot of trials." Then the following exchange occurred:

"The Court: Okay. And is it still your choice to go forward pro per in this trial?

"Defendant Venegas: At this point, yes. I have just been served an amended Information.

"The Court: All it did is add a strike. It added a strike.

"Defendant Venegas: Yes."

The trial court proceeded to discuss defendant's maximum sentencing exposure in the case. After the discussion, the following exchange occurred:

"The Court: Okay. All right. And, [defendant], once I've given you all that information, I'm very willing to go forward with you in pro per status if that's what you want to do.

"Defendant Venegas: Yes, Your Honor.

"The Court: You do?

"Defendant Venegas: I do, Your Honor."

We read the record as the trial court informing defendant generally of the risks of self-representation, checking if defendant was still interested in self-representation given that information, and then, because defendant was still interested, advising defendant of the specific sentencing risks associated with this case, and then finally taking defendant's waiver. To the extent the People are reading the record as the trial court taking two waivers in succession, such a reading is not reasonable. If the trial court had accepted defendant's waiver of counsel prior to misinforming him about the

33

maximum eight-year prison sentence, then the court would not have proceeded to discuss the issue with defendant and take the waiver again. Thus, as we read the record, (1) no advisements about the risk of the case were given at the arraignment on the complaint, (2) no advisements about self-representation were given at the arraignment on the original information, and (3) misinformation about the maximum penalty was given at the arraignment on the FAI.

The People assert that, because defendant was facing a death penalty case, receiving a sentence of 30 years to life "may not have been as concerning to him as it would be for someone who did not face a potential death sentence," and thus defendant would have waived counsel if he had received a correct advisement. The People's argument ignores the record. When defendant finally understood that this case involved a possible life sentence, he requested counsel and had counsel at his sentencing hearing. Defendant's request for counsel in this case occurred prior to the jury fixing the penalty in the death penalty case. Therefore, the record indicates that defendant would have wanted counsel had he known he was facing a sentence of 30 years to life.

The People assert that, at the start of the court trial on the prior convictions, the trial court said there were two prior strike convictions, and defendant did not, at that point, request counsel, which indicates defendant would have waived counsel if he had been informed of the correct maximum sentence. At the start of the court trial, the trial court did not indicate that defendant was facing a sentence of 30 years to life. Defendant understood that there was to be a trial on the two prior attempted murder convictions, but he had been affirmatively misinformed that the two prior convictions

34

meant (1) he would be denied probation, and (2) his sentence could be doubled to eight years. Thus, the fact that defendant was aware of the allegations does not mean he understood that he was facing a potential life sentence.

The People assert that if defendant had counsel at trial, then the result would have been the same because the evidence of defendant's guilt was "insurmountable." Our prejudice inquiry does not concern whether defendant might have prevailed on the charges if he had counsel, rather, our inquiry is whether defendant " 'would have accepted the appointment of counsel had the court' " properly advised defendant. (*Sullivan*, *supra*, 151 Cal.App.4th at p. 551; see also *People v. Noriega*, *supra*, 59 Cal.App.4th at p. 321 ["whether appellant would have decided in favor of professional representation had he been fully informed of the dangers and risks of his decision to proceed in propria persona"].)

We do not delve into whether a different outcome may have occurred at trial if defendant had counsel because if defendant had trial counsel, then counsel may have presented different evidence and approached the case with an entirely different strategy. In other words, we do not know and cannot speculate what difference counsel may have made either procedurally or in terms of the evidence presented. As a result, prejudice is sufficiently demonstrated by the portions of the record indicating defendant would not have waived counsel had he known that he was facing a 30 year to life sentence. (See *Cordova v. Baca* (2003 9th Cir.) 346 F.3d 924, 930 ["What matters is that the defendant was put on trial without a lawyer though the Constitution guarantees him that right.

35

That is the kind of defect in the trial process the Supreme Court has told us time and again cannot be unscrambled"].)

## DISPOSITION

The judgment is reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                    J.

We concur:

McKINSTER _____
              Acting P. J.

CODRINGTON _____
                              J.