Filed 10/1/25  P. v. Eke CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C099886 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE004251) |
| v. | |
| CHIDI JOACHIM EKE, | |
| Defendant and Appellant. | |

Following his convictions for 15 sex offenses against his two daughters, defendant Chidi Joachim Eke appeals, contending he was denied a fair trial.  Specifically, he contends the trial court erred by restricting cross-examination regarding delayed disclosure of the abuse; admitting evidence regarding child sexual abuse accommodation syndrome; admitting photographs of young women in bikini-like clothing found on his phone; and admitting evidence that he possessed a flight itinerary out of the country at the time of the arrest.  We disagree and thus affirm.

## BACKGROUND

Given the issues challenged on appeal, we do not find it necessary to provide details of the facts of this case.  Suffice it to say that a jury found Eke guilty of multiple

counts of child molest upon his two minor daughters: lewd and lascivious acts on a child (daughter No. 2) under the age of 14 years (Pen. Code, § 288, subd. (a))[1] (counts one through four); lewd act on a child (daughter No. 2) aged 14 or 15 years (§ 288, subd. (c)(1)) (counts five & six); lewd and lascivious acts on a child (daughter No. 1) under the age of 14 years (§ 288, subd. (a)) (counts seven, nine, eleven, thirteen, & fifteen); and sexual intercourse with a child (daughter No. 1) 10 years or younger (§ 288.7, subd. (a)) (counts eight, ten, twelve, & fourteen). The jury also found true additional allegations that the victims were particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)),[2] the manner in which the crimes were carried out indicated planning, sophistication, or professionalism (rule 4.421(a)(8)), and Eke took advantage of a position of trust and confidence to commit the offenses (rule 4.421(a)(11)).

The trial court sentenced Eke to a determinate term of 14 years eight months, plus an indeterminate term of 100 years to life.

Eke now timely appeals.

## DISCUSSION

### I

### *Limitation of Cross-examination*

Eke contends the trial court limited his cross-examination of daughter No. 1[3] in violation of his right to confront the witness against him under the confrontation clause of

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Undesignated rule references are to the California Rules of Court.

[3]     We refer to the victims as "daughter No. 1" and "daughter No. 2" in an effort to protect their privacy interests where referral to first names or initials would defeat the objective of anonymity. (See Cal. Rules of Court, rule 8.90(b)(4) [permitting us to omit full names in referring to "[v]ictims in criminal proceedings" to protect their privacy interests].)

the Sixth Amendment to the federal Constitution, denying his right to present a defense. Having failed to raise this claim before the trial court, we could resolve the claim by finding that Eke has forfeited it. (*People v. Thornton* (2007) 41 Cal.4th 391, 427.) However, we easily find the trial court properly sustained the objection to the two questions at issue under the rules of evidence and we reject Eke's contention on the merits.

A criminal defendant has a "fundamental constitutional right to a fair opportunity to present a defense." (*Crane v. Kentucky* (1986) 476 U.S. 683, 687.) "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment [citation], or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, [citations], the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " (*Id*. at p. 690.)

The confrontation clause of the Sixth Amendment to the United States Constitution, applicable to the states through the due process clause of the Fourteenth Amendment (*People v. Fletcher* (1996) 13 Cal.4th 451, 455), also "guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' " (*Davis v. Alaska* (1974) 415 U.S. 308, 315.)[4] This includes " 'two types of protections for a criminal defendant:  the right physically to face those who testify against him, and the right to conduct cross-examination.' " (*Coy v. Iowa* (1988) 487 U.S. 1012, 1017.) Indeed, " ' "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." ' " (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 678, italics omitted (*Van Arsdall*).)

---

[4]    Article I, section 15 of our state Constitution also provides a criminal defendant with "the right . . . to be confronted with the witnesses against" him or her. (See *People v. Cromer* (2001) 24 Cal.4th 889, 896.)

Not every restriction of cross-examination amounts to a constitutional violation, however, and the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance. (*Van Arsdall, supra*, 475 U.S. at pp. 678-679; see *People v. Gonzalez* (2021) 12 Cal.5th 367, 406 ["A trial court maintains ' "wide latitude insofar as the Confrontation Clause is concerned to impose limits" ' on cross-examination"].) "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " (*Van Arsdall*, at p. 680, quoting *Davis v. Alaska, supra*, 415 U.S. at p. 318.)

"Proper application of *Van Arsdall* requires threshold consideration of whether the trial court exercised sound discretion under state law evidentiary standards in limiting the scope of cross-examination." (*People v. Castaneda-Prado* (2023) 94 Cal.App.5th 1260, 1282.) "If the trial court excluded 'evidence of marginal impeachment value' [citation] or otherwise merely carried out the routine evidentiary function of controlling the scope of permissible cross-examination, the answer to this initial evidence question will generally be yes—the trial court was within its discretion—and the inquiry comes to an end. There was no error, under either state law or under the Sixth Amendment." (*Ibid*.) "Where a trial court effectively renders cross-examination an exercise in futility, we must proceed to a second stage of analysis. Here, we ask a further, purely constitutional question whether '[a] reasonable jury might have received a significantly different impression' of the challenged witness's credibility if the proposed line of cross-examination had been permitted. (*Van Arsdall, supra*, 475 U.S. at p. 680.)" (*Ibid*.; see also *People v. Gonzalez, supra*, 12 Cal.5th at p. 406.) In making this determination, we undertake a de novo review. (*Castaneda-Prado*, at p. 1283.)

Here, the defense questioned daughter No. 1 about her long delay (nearly nine years) in making her accusations against Eke. Defense counsel asked, "It would seem to me that given the nature of [the sexual] act, which was upsetting, certainly surprising, but very embarrassing for you, you would have told your mother, correct?" The trial court sustained the prosecution's objection that it was an "[i]mproper question." The court then recessed for the evening and when cross-examination resumed, defense counsel did not immediately pursue the issue of daughter No. 1's delay in bringing forth the allegations.

Subsequently, defense counsel refocused on the issue as to why daughter No. 1 delayed in reporting the abuse until she was much older, in light of her professed concern that Eke might otherwise begin molesting her younger sister:

"[DEFENSE:] Isn't it true that you were getting ready to go off to college? Isn't that correct?

"A: Yes.

"[DEFENSE:] And if you did that, your sister would have been left alone with your mother and father; correct?

"A: Yes.

"[DEFENSE:] So the question I've got is why you disclosed in July 2020 and not before if you were concerned about your sister being touched? You were going to leave the home.

"A: Because I decided --

"[PROSECUTOR:] Your Honor, I'm going to object as to argumentative. It's vague. It's compound.

"THE COURT: Sustained.

"[DEFENSE:] Okay. Isn't it, in fact, true . . . , that you and your sister concocted this story about being touched because your mother was not going to leave your father? Isn't that correct?

"A: Not at all in the slightest.

"[DEFENSE:]  You were hoping your mother would divorce your father, and then if you went off to college, your sister wouldn't be left alone with him; isn't that correct?

"A:  No. . . ."

Eke contends that by sustaining the above objections, the trial court effectively foreclosed any inquiry into the inconsistencies in daughter No. 1's explanations for her delay in reporting the abuse, which precluded the defense from challenging her credibility for the jury's benefit.  The People respond that the objections were properly sustained, as both questions were argumentative and not designed to elicit relevant testimony.  The People further assert that defense counsel had the option to rephrase his questions into proper format but did not do so.  We agree with the People.

Initially, we do not interpret the court's evidentiary ruling as depriving Eke of pursuing a line of questioning that, we agree, was relevant.  It was entirely appropriate for Eke to challenge daughter No. 1's credibility in light of her delayed disclosure, as "the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his [or her] testimony at the hearing, including but not limited to" the character of the witness's testimony, the existence of a bias, interest, or other motive in testifying, or statements made by the witness that are inconsistent with any part of the witness's testimony.  (Evid. Code, § 780.)  However, Eke was required to do so with properly phrased questions.  Eke was also required to pursue the line of questioning he claims he was deprived of.

Both questions at issue were argumentative.  "An argumentative question is a speech to the jury masquerading as a question.  The questioner is not seeking to elicit relevant testimony." (*People v. Chatman* (2006) 38 Cal.4th 344, 384.)  Instead, it is designed to either engage the witness in argument or argue directly to the jury.  (*Ibid*.)  That is the case here.  Both inquiries contained a speech that established counsel's theory of reasonable behavior then asked whether the witness behaved in accordance with the theory.  They served no purpose other than to engage in argument with daughter No. 1

6

and/or to portray her as unreasonable by virtue of any disagreement with the defense-created theory of reasonable behavior.  Thus, the objections on that basis were properly sustained.

In addition, the second question was compound and/or vague, as indicated by the prosecutor.  That question sought an explanation for three facts:  why the disclosure happened in 2020, why the disclosure did not happen "before" (without specificity as to time), and confirmation of concern that daughter No. 2 would be abused.  The second question was appropriately sustained on those bases as well.  Further, we see no indication from the trial court's rulings that Eke was prevented or foreclosed from restating the questions in the proper format.

Additionally, we note that the questions at issue did not seek to elicit the existence of facts not otherwise before the jury.  Indeed, a review of the record reveals defense counsel was able to cross-examine daughter No. 1 about the details of the assaults, her delay in reporting them, the inconsistencies in her actions, testimony and prior statements, as well as whether she harbored a desire for her parents to divorce as a motive for the accusations against Eke.  Thus, the trial court did not foreclose Eke from an entire line of inquiry challenging daughter No. 1's credibility as it pertained to her delay in reporting the abuse and, contrary to Eke's claim, the court did not deprive his ability to present a defense by sustaining objections to those two questions.  Even without answers to those questions, Eke had a basis for his argument that she was not credible based on her delay in reporting, and this argument was made to the jury at the appropriate time.

In sum, there was no error, under either state law or under the Sixth Amendment. (See *Castaneda-Prado, supra*, 94 Cal.App.5th at p. 1282.)

II

*Admissibility of Child Sexual Abuse Accommodation Syndrome Evidence*

Dr. Blake Carmichael testified as an expert on child sexual abuse and the effect of child sex abuse on children.  Dr. Carmichael testified about myths and misconceptions

7

about child sexual abuse. He discussed various topics associated with delayed disclosure. He also discussed several of the components of child sexual abuse accommodation syndrome (CSAAS): secrecy; helplessness; entrapment and accommodation; and delayed, unconvincing, and conflicted disclosure. He opined that CSAAS is an educational tool to help people understand children who have been sexually abused.

Eke contends the trial court erred by admitting expert testimony on CSAAS because it is "unreliable and infringes upon the jury's role to evaluate the credibility of witnesses." He claims he is entitled to a reversal of the judgment. We disagree.

We review a trial court's decision to admit expert opinion testimony for an abuse of discretion. (*People v. McDowell* (2012) 54 Cal.4th 395, 426.) Under the abuse of discretion standard, we review the trial court's legal conclusions de novo and may reverse the trial court's application of the law to the facts only if we find that the court acted in an arbitrary and capricious manner. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.)

Eke's position that CSAAS evidence is inherently unreliable and therefore inadmissible is foreclosed by binding California Supreme Court precedent. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) In *People v. McAlpin* (1991) 53 Cal.3d 1289, the Supreme Court ruled that although expert testimony about CSAAS "is not admissible to prove that the complaining witness has in fact been sexually abused[,] it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with [the child's] testimony claiming molestation. [Citations.] 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior. [¶] The great majority of courts approve such expert rebuttal testimony.' " (*Id.* at pp. 1300-1301, fn. omitted.) Based on *McAlpin*, California appellate courts have held that when offered for this purpose, CSAAS expert testimony is

8

sufficiently reliable to be admitted. (E.g., *People v. Ramirez* (2023) 98 Cal.App.5th 175, 214-216; *People v. Munch* (2020) 52 Cal.App.5th 464, 472-473.)

Eke acknowledges *McAlpin* but contends we should reconsider the issue and adopt the reasoning from a relatively small number of out-of-state courts that he claims have concluded the evidence is irrelevant and inadmissible for any purpose. We decline to revisit or deviate from *McAlpin*. That Supreme Court decision is binding on all lower courts in this state. (*Auto Equity Sales, Inc. v. Superior Court, supra*, 57 Cal.2d at p. 455.) Disagreement by other jurisdictions does not change its impact on California cases. (*Ibid*.; see *People v. Munch, supra*, 52 Cal.App.5th at p. 468 [rejecting a similar invitation to revisit or deviate from *McAlpin*].) Accordingly, we adhere to precedent from our state Supreme Court that CSAAS evidence is generally admissible for the limited purposes for which it was admitted in the instant case. We therefore find no abuse of discretion in the trial court's admission of this evidence.

III

*Admission of Photographic Evidence*

Eke contends the trial court erred in admitting photographs of two young women in bikini-type clothing, discovered during a search of Eke's cell phone. He argues the photographs were irrelevant without foundational evidence that the women were underage, the photographs were sexually provocative, or that Eke actually looked at the photographs. He further contends that any probative value was outweighed by the prejudicial implication that these women were underage and that he had the photographs for prurient reasons. We disagree.

A. Additional Background

Prior to trial, the defense moved to exclude two photographs discovered on Eke's cell phone. One photograph depicts a young woman in a blue bikini. The other depicts a young woman in a bikini-like top in the background and in the foreground a young woman wearing a small pair of shorts and a bra or bikini-like top that provides little to no

9

coverage of her breasts that are otherwise somewhat bound by her own arm. Eke contended, inter alia, that the two photographs should be excluded as irrelevant, speculative as to their age, and more prejudicial than probative.

The prosecution, however, sought to admit the photographs as relevant to show that Eke had a "sexual interest in children, that he is specifically attracted to this particular age of girl who matches closely in age with the victim . . . ."

The trial court admitted the photographs, stating, "So they are girls in a bra and a bikini so I don't think it's solely inflammatory. However, there is some probative value as it appears that these girls are not someone anybody knows or related or like a relative, but these photos are on his phone. It looks—and the date stamp shows that they were viewed close to the time that [daughter No. 2] stated she was abused. It appears the jury may determine that they're close in age to [daughter No. 2]. So I think they have some relevance and certain—so I think the probative value is not substantially outweighed by the danger of undue consumption of time or undue—danger of undue prejudice or confusing the jury. [¶] So under [Evidence Code section] 352 I'm going to admit the photos because it could show defendant has an interest in girls of this age. Also, it appears to me that it could be very relevant to your examining and cross-examining your expert regarding the Stoll exam."

At trial, Detective Nicole Monroe testified she found the photographs on Eke's cell phone and that the metadata showed that they were created and accessed on July 5, 2021. The officer also testified that, in her opinion, the women in the pictures appeared to resemble daughter No. 1 and daughter No. 2 because they were the same ethnicity, about the same age as when the sisters were interviewed, and the women in the second photograph—the one wearing the blue bikini—had the same hairstyle as daughter No. 2 at the time the officer interviewed her. When Eke was asked about these photographs, he testified that he did not know how the photographs got on his phone.

10

B. Analysis

Only relevant evidence is admissible at trial. (Evid. Code, § 350.) " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) We review an Evidence Code section 352 ruling for abuse of discretion. (*People v. Merriman* (2014) 60 Cal.4th 1, 74.)

    i.    Probative Value

Eke contends that although the women in the photographs "undeniably appeared young," "the prosecution failed to provide sufficiently substantial foundation evidence that the young women depicted in the photos were actually underage girls." He further contends there was no foundation establishing the photographs were sexually provocative or that he actually looked at the photographs. With this failure of proof, Eke contends, the photographs were not relevant and therefore inadmissible. We note Eke cites no authority in support of his argument that admissibility depended on proof of such specific foundational evidence. Nevertheless, his claim fails.

"Photographs and video recordings with imprinted data are writings as defined by the Evidence Code. (Evid. Code, § 250.) To be admissible in evidence, a writing must be relevant and authenticated. ([Evid. Code,] §§ 350, 1401.)" (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266, fn. omitted.) "The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered." (*Id.* at p. 267.) Here, Detective Monroe testified the photographs shown to the jury were the photographs she viewed on Eke's cell phone, which had been searched pursuant to a warrant. This was sufficient to

establish authenticity because it established the photographs introduced at trial were fair and accurate representations of what they purported to be:  photographs found on Eke's cell phone.

Further, the challenged photographs had probative value as they were relevant to show Eke was sexually interested in young women.  Specifically, the photographs were found on Eke's phone and metadata established that they were saved and accessed the day he allegedly abused daughter No. 2 for the last time.  Also, Detective Monroe opined that the women in the pictures were the same ethnicity, appeared to be the same age as daughter No. 1 and daughter No. 2 when they were interviewed, and the woman in the second photograph—the one wearing the blue bikini—had the same hairstyle as daughter No. 2 at the time the officer interviewed her.  Finally, the content of the photos suggest they were used as sexually provocative images:  the photographs depicted three scantily clad young women.  Although the photograph of the woman in the blue bikini was less sexually provocative than the other photograph that included one young woman with little to no coverage of her breasts, the fact that the woman in the blue bikini could be around the same age as daughter No. 2 and with the same hairstyle, paired with the photograph of the young woman with mostly bare breasts suggest a sexually provocative use of the photos that was potentially linked to the abuse of Eke's daughters.  All of these circumstances provided circumstantial evidence that Eke viewed them for prurient purposes.  Thus, the photographs had probative value, and the jury was allowed to decide for itself what, if any, weight to ascribe to them.

ii.    No Undue Prejudice

Evidence is prejudicial in this context if it "is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction."  (*People v. Doolin* (2009) 45 Cal.4th 390, 439.)  " ' " 'A trial court's decision to admit photographs under Evidence Code section 352 will be upheld on appeal

12

unless the prejudicial effect of such photographs clearly outweighs their probative value.' " ' " (*People v. Parker* (2022) 13 Cal.5th 1, 41.)

Eke contends the photographs were unduly prejudicial because they presented "an intolerable risk the jurors would accept the prosecution's challenging claims that [Eke's] possession of the photos . . . proved his sexual interest in his own underage children." We disagree. The photographs were not unduly inflammatory. Two of the three young women were clothed, albeit with bikini-like clothing. The third woman contained her breasts with an arm partially obscuring the view. In short, while they had value relevant to the ultimate issues at trial, they were not so sexualized as to improperly sway the jury. And, with respect to whether they depicted underage women, "[t]he jury is entitled to review the evidence, including photographs, to ascertain whether the prosecution's theory is supported." (*People v. Parker, supra*, 13 Cal.5th at p. 42.) Thus, Eke fails to establish an abuse of discretion or a violation of due process.

IV

*Evidence of Flight*

After Eke's arrest on March 17, 2022, Detective Monroe searched Eke's vehicle and found a flight itinerary showing a plane ticket purchased for a flight out of the country scheduled to leave on April 1, 2022. Detective Monroe did not know when the plane ticket was purchased. Eke contends the trial court erred in admitting evidence of the plane ticket when there was no support for the inference he possessed them with the intent to flee prosecution. We disagree.

"Evidence showing consciousness of guilt, such as flight or escaping from jail, is generally admissible within the trial court's discretion." (*People v. Anderson* (2018) 5 Cal.5th 372, 391.) " ' "[F]light requires neither the physical act of running nor the reaching of a far-away haven. [Citation.] Flight manifestly does require, however, a purpose to avoid being observed or arrested." ' " (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.) While physical flight to evade capture or escape from custody are two

obvious examples of relevant conduct, the courts have long held, " '[a]ny conduct of a defendant subsequent to the commission of the crime tending to show consciousness of guilt is relevant and admissible . . . .' " (*People v. Butler* (1970) 12 Cal.App.3d 189, 193.) "[T]here need only be some evidence in the record that, if believed by the jury, would sufficiently support the suggested inference [of consciousness of guilt]." (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 102.)

Here, such inference was not required but was reasonable. Eke knew he was under investigation but had a plane ticket to leave the country while the investigation was ongoing. The jury could have reasonably concluded these circumstances reflected that Eke intended to flee to avoid prosecution. Although this evidence may also be compatible with Eke's claim that this was his yearly trip to his home country, it did not make it any less relevant, and the jury was the ultimate decider on the meaning and value of the evidence. (See *People v. Rhodes* (1989) 209 Cal.App.3d 1471, 1477 ["Alternative explanations for flight conduct go to the weight of the evidence, which is a matter for the jury, not the court, to decide"].)

We further conclude that any error in admitting evidence of the ticket was harmless as it is not reasonably probable that Eke would have obtained a more favorable result had the evidence been excluded. (See *People v. Watson* (1956) 46 Cal.2d 818, 835-836.) The fact that Eke possessed a plane ticket for a trip that may or may not have been preplanned was not so inflammatory as to sway the jury in reaching a verdict. Indeed, the prosecutor did not argue that Eke's plane ticket tended to show his guilt; the prosecutor did not mention the plane ticket or planned trip at all during closing arguments. (See *People v. Tuggles* (2009) 179 Cal.App.4th 339, 367 [rejecting a claim that the jury could have inferred consciousness of guilt when the defendant stayed with his grandmother for a day after the shooting where the prosecution did not argue consciousness of guilt based on the defendant's leaving the area]; cf. *People v. Crandell* (1988) 46 Cal.3d 833, 870 [instructional error resulted in no harm where flight "instruction did not figure in the

14

prosecutor's closing argument"], overruled on another point in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.) The prosecution presented compelling evidence that Eke committed the charged crimes whether or not the jury thought he had plans to flee.

Accordingly, we find no abuse of discretion in the admission of the evidence of the plane tickets.

V

*Cumulative Error*

Finally, Eke raises a cumulative error argument. Here, there is no error to cumulate. (*People v. Greeley* (2021) 70 Cal.App.5th 609, 623.)

**DISPOSITION**

The judgment is affirmed.

/s/
EARL, P. J.

We concur:

/s/
RENNER, J.

/s/
FEINBERG, J.